105 So.2d 532 (1958)
235 La. 810
Roy J. DROUIN
v.
Elizabeth J. HILDENBRAND.
No. 44011.
Supreme Court of Louisiana.
October 7, 1958.
Anthony J. Roy, Sr., Maxwell J. Bordelon, Marksville, for relator.
Laborde, Edwards & Lafargue, Marksville, for respondent.
McCALEB, Justice.
Plaintiff brought this suit for a separation from bed and board and to be awarded the custody of his 15-month-old infant child, who has been in the care and possession of his wife since its birth. Defendant does not contest the claim for a legal separation, which is grounded on the continuous voluntary separation of the parties for a period exceeding one year, but vigorously opposes plaintiff's demand for custody of the child, alleging that she is entitled to be recognized as its legal custodian and that her husband should be made to pay alimony for the child's support.
After a hearing below judgment was rendered in plaintiff's favor, as prayed for. The wife thereupon applied here for remedial writs, complaining only as to that portion of *533 the judgment awarding the husband permanent care and custody of the child. Certiorari was granted and the matter has been submitted for our decision.
The record exhibits the following facts. The parties, who are residents of Mansura, Louisiana, were married on August 25, 1956. Defendant was 16 years of age and pregnant at the time; plaintiff was 22. Following the marriage plaintiff brought his bride to the home of his father and mother, where she remained less than a month, or until September 20, 1956, when she left her husband and returned to the household of her own parents. On November 27, 1956 the child was born. From the date of the separation until the trial of the case, plaintiff has attempted to effect a reconciliation with defendant but his efforts have been fruitless, defendant stating in her testimony that she is unwilling to resume the marital relation. After the birth of the child, plaintiff was inducted into the armed services, where he remained for over five months. Upon his return to Mansura he was permitted by defendant to have the child in his possession for three days each week.
In June of 1957 defendant went to New Orleans to attend a business college so that she can ultimately qualify for office employment and, during her stay in that city, she is living at an apartment hotel with her grandmother. Since she has been attending school, her parents, Dr. and Mrs. J. C. Hildenbrand, have kept the child for her at their home in Mansura. Defendant testified that it was her practice to return to Mansura about two or three times each month to be with the baby. She further stated that she is to graduate from business college in about six weeks (the date of the trial was March 3, 1958), at which time she hopes to secure work in Alexandria, Louisiana or at some other place close to Mansura where she could live at home and have her child in daily personal charge.
Plaintiff, while professing his love and affection for the child, implies in his testimony that his wife is not similarly devoted and attentive. He states that, if granted custody, he plans to bring the child to the home of his parents where he will give it every care and attention. He further declares that he is well able to provide for the child; that he was working for his father in the mercantile business at the time of his marriage, earning a salary of $400 per month and that he is now in business for himself, having but recently opened a barroom and cocktail lounge near his home.
Under this evidence the trial judge determined that the welfare of the infant would be best served by awarding custody to the father. He took the position that the child was really not in defendant's custody, as she had left it in the care and control of her parents when she went to New Orleans and that, in these circumstances, the issue of legal custody was one between the father and the maternal grandparents.
We cannot subscribe to this view which is based, in part, on the erroneous premise that defendant has relinquished the custody and control of the child to her parents. Rather, it is correct to say (as the record reflects) that the child has been left temporarily in the care of the maternal grandparents during the time that defendant is taking a business course in New Orleans in order that she may qualify for work and become self-supporting.
Since there is not a scintilla of probative evidence to show that this young mother is either morally or otherwise unfit to rear her child, she is entitled to preference as legal custodian. The applicable rule in cases of this sort is tersely stated in Cannon v. Cannon, 225 La. 874, 74 So.2d 147, 148, thus:
"It is well settled in the jurisprudence of this state that in cases involving the custody of children the primary concern of the court is the welfare and best interest of the children (Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Sampognaro v. Sampognaro, 222 La. 597, 63 So.2d 11; Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3; Wilmot v. Wilmot, 223 *534 La. 221, 65 So.2d 321) and that it is to the welfare and best interest of young children that the mother be awarded their custody unless she is shown to be morally unfit or otherwise unsuitable (Kieffer v. Heriard, supra; Pepiton v. Pepiton, supra)."
As defendant is not an unsuitable person to raise her child, the judge abused his discretion in taking it from her and awarding custody to plaintiff.
It would appear from the written opinion of the judge that he was unfavorable impressed by the refusal of defendant to accede to plaintiff's entreaties for a reconciliation. But defendant's desire to end the marriage did not constitute a valid basis for denying her preferential right to the custody of her child; denial of this right must rest on unfitness or proof of existing conditions detrimental to the child's welfare.
Defendant has asked for alimony for the support of her child, to which she is clearly entitled under the law, but no evidence was offered by her to show the amount required for the child's upkeep. Under these circumstances, the cause will be remanded to hear evidence so that the alimony due by plaintiff may be fixed and assessed and also for the fixing of the time and conditions under which plaintiff may exercise his right of visitation to the child.
The judgment of the district court is therefore reversed insofar as it awards plaintiff the care and custody of the child, Timothy Drouin, and it is now ordered that defendant, Elizabeth J. Hildenbrand, be granted the permanent care, custody and control of said child, the case being remanded to the district court for the fixing of the alimony to be paid defendant by plaintiff for the support of the child and the fixing of the time and conditions under which plaintiff may exercise his right of visitation. In all other respects, the judgment of the trial court is affirmed. Plaintiff is to pay all costs.
HAMITER, J., dissents with written reasons.
HAWTHORNE, J., dissents.
HAMITER, Justice (dissenting).
In this cause plaintiff, Roy J. Drouin, sought and obtained a judgment of separation from bed and board from the defendant, Mrs. Elizabeth Hildenbrand Drouin, the ground therefor being that they had voluntarily lived separate and apart for one year (Civil Code Article 138, as amended by Act 303 of 1956). Also, he prayed for and was granted the legal custody of their infant son who was born November 27, 1956.
Contesting the custody award, the defendant applied to this court for remedial writs. We granted the writ of certiorari with a stay order and issued a rule to show cause, our primary reason for the action being that the child was then living with the maternal grandparents and we were of the belief that a change in his care should not be effected until after we were afforded an opportunity to examine the evidence on which the complained of ruling was based.
The principles of law appropriate to this cause, which are not disputed by the parties, are well stated in Guillory v. Guillory, 221 La. 374, 59 So.2d 424, 425. Therein we said: "A mother is entitled to the custody of her child unless it be shown that she is morally unfit or that it would be a greater advantage to award its custody to its father. The paramount consideration in determining to whom the custody of the child should be granted is the welfare of the child. In awarding the custody of the child a large discretion is left to the trial judge, which, of course, is subject to review. A reasonable latitude must be left to the trial judge and his judgment is entitled to great weight. * * * This case, as in many cases involving the custody of children, resolves itself into a question of fact. * * *" (Quoted with approval in State ex rel. Magliore v. Saragusa, 229 La. 967, 87 So.2d 309.)
*535 Accordingly, the question for determination here is whether, under the evidence adduced, the trial judge abused his discretion in awarding legal custody of the child to plaintiff, the father.
This defendant admits (and the record otherwise conclusively shows) that she voluntarily, without any provocation on the part of plaintiff, abandoned the marital domicile shortly before the child was born. And she has since steadfastly refused to return notwithstanding the repeated attempts of plaintiff at reconciliation, even his enlisting the aid of the trial judge (after this suit was filed) toward that end. Her only reason for leaving, to quote from her testimony, appears to be:
"Q. Mrs. Drouin, were you in love with your husband at the time that you separated from him?
"A. No, sir, I don't think I was. I think that's why I separated from him.
"Q. Do you now think that you were in love with him at the time you married him?
"A. No, sir."
Principally, the son has been in the care of his maternal grandparents at their home in Mansura, Avoyelles Parish, in which city plaintiff also resides with his parents. Pursuant to an agreement with the defendant, however, plaintiff has had such child at his parents' home during some of the daylight hours (approximately seven) of each Tuesday, Thursday and Sunday. Clothes and accommodations for him have been provided in the latter place, and there he will be cared for if the custody ruling of the trial judge is approved by us.
Since June, 1957 the defendant (she was then seventeen years of age) has lived in New Orleans in an apartment at the Claiborne Towers. In that city she attends a business college, and she also does studio modeling work, during five days of each week. On week ends, occasionallyapproximately once every three weeks and sometimes then for only a Sundayshe visits her parents in Mansura, some 180 miles from her present New Orleans residence.
There is no evidence disclosing that either plaintiff or defendant is morally unfit to rear the child. Furthermore, it appears that the homes of both the maternal and paternal grandparents are highly suitable and acceptable as places for properly rearing the child.
For succeeding in this court the defendant relies solely on the usually prevailing paramount right of the mother to the legal custody of her child. On the other hand the plaintiff contends that in the instant case such right (to which he gives recognition) should not be enforced because a ruling in favor of the defendant will in effect place the actual custody in the maternal grandparents (not the mother), his custody right being superior to theirs; and, further, that it is to the best interest of the child, a boy, to be reared by him.
In awarding the legal custody to plaintiff the trial judge, in his written reasons therefor, observed: "Defendant herself has not now the custody of the child. The child is presently with its maternal grandparents and there is no question but that at the present time and for the unforeseeable future if the child were granted to defendant it would in fact result in the grandparents and not the defendant having custody.
"* * * The father of this child has done everything within his power to induce his wife to return to him so that they might make a success of their marriage not only for their own sake but above all for the welfare of their baby son. Not only has the plaintiff personally attempted to secure this result but he has enlisted the efforts of others in that direction including the Court itself which has twice had a conference with the defendant in a fruitless effort to get her to return to her husband. All of these efforts have been of no avail and she has firmly and persistently adhered to a course which must inevitably bring sorrow and suffering *536 to all concerned particularly to the baby boy who is a most innocent victim of circumstances entirely beyond his control.
"There is no question but that the plaintiff is lavish in his love and affection for his child while the mother on the other hand demonstrates an apparent lack of interest and indifference which the Court is unable to comprehend.
"* * * There can be no question that plaintiff dearly loves his child. He is apparently dependable and responsible and dedicated to the welfare of his boy. He is making a good living, has a good home and his parents are quite comfortably fixed.
"* * * Everything considered therefore, the Court is of the opinion that the welfare of plaintiff's baby son would be best served by having him live with his father instead of the maternal grandparents. * * *"
I cannot say that the trial judge abused the discretion vested in him in so concluding. As pointed out above the defendant has almost entirely relinquished the care of the child to the maternal grandparents who live some 180 miles from her present residence and with whom she visits rather infrequently. And by such voluntary action, without any provocation on the part of plaintiff, she has placed herself in the position of not being able (or perhaps not caring) to give the child her love and attention that he deserves and should have.
Plaintiff, on the contrary, desires to and can suitably care for the child and bestow appropriate affection on him. Too, the physical transfer of the child to the home of plaintiff's parents (also plaintiff's home) will have no harmful effect on him for there, as before shown, he has heretofore spent parts of three days each week. Moreover, under the district court's ruling the defendant can be with him as much as she has been under her above described voluntary arrangement, the custody award to plaintiff having been made "* * * subject to liberal visitation privileges in favor of the defendant, mother, she being given the right and privilege of seeing and visiting with said child and having him visit with her and her parents at all reasonable times, especially on the week ends when she visits her parents in Mansura from her present residence in New Orleans, * * *."
The cases principally relied on by the defendant are inapposite, they being White v. Broussard, 206 La. 25, 18 So.2d 641, Willis v. Willis, 209 La. 205, 24 So.2d 378, Veillon v. Landreneau, 209 La. 1060, 26 So.2d 139 and State ex rel. Morrison v. Morrison, 212 La. 463, 32 So.2d 847. Implicit in the opinion in each of them is the finding of the court that (unlike the situation here) the mother, to whom legal custody was awarded, could and would herself afford the child loving care, attention and protection. That is true also with respect to the opinion in Cannon v. Cannon, 225 La. 874, 74 So.2d 147, from which the majority quoted approvingly herein.
On behalf of defendant it is argued that although she resides in an apartment in Claiborne Towers in New Orleans her grandmother lives there also. In her testimony, however, she admits that such relative travels considerably and hence is not with her all of the time.
The defendant further urges that she is in New Orleans temporarily and only for the purpose of getting a business education in order that she can take care of the child. But she concedes that she had never considered the possibility of taking the same course at a nearby school, as she might have done (in Alexandria or Cottonport), so that her son could receive her attention and love. The only reason given for this omission was that "I didn't think about it." On this point the trial judge appropriately said: "* * * It is quite clear that if her purpose is to get an adequate business *537 school education she could do so either at the Cottonport Trade School which is only some five or six miles from her father's home in Mansura or from a business college in Alexandria which is only thirty-five miles from Mansura. In spite of this situation she chooses to go to school in New Orleans which puts her some one hundred eighty miles from her said child."
Again, with reference to the schooling of defendant, her counsel argue that she will soon be finished and perhaps will obtain a position near Mansura so that she can be with the child. However, like the district judge we should determine the issues on the basis of the facts as they existed at the time of the trial (those shown by the transcript of testimony); and I agree with him that no evidence was adduced disclosing that the defendant seriously desires, or will be in a position, to discharge her parental duties at any time in the foreseeable future. Unquestionably, this failure of proof on the part of the defendant is an important consideration in the application here of Civil Code, Article 157 which recites: "In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. * * *" As before shown, this plaintiff (the child's father) obtained the judgment of separation rendered herein.
Also, in determining this dispute, it is well to remember that custody judgments are not final. If within a reasonable time this defendant displays her willingness and eagerness to give the child her love and devotion, and is able to care for him, she can again seek his custody.
Therefore, I am of the opinion that the writ, order and rule heretofore issued by us should be recalled and vacated and that the judgment of the district court should be affirmed.