HAMITER, Justice
(dissenting).
In this cause plaintiff, Roy J. Drouin, sought and obtained a judgment of separation from bed and board from the defendant, Mrs. Elizabeth Hildenbrand Drouin, the ground therefor being that they had voluntarily lived separate and apart for one year (Civil Code Article 138, as amended by Act 303 of 1956). Also, he prayed for and was granted the legal custody of their infant son who was born November 27, 1956.
Contesting the custody award, the defendant applied to this court for remedial writs. We granted the writ of certiorari with a stay order and issued a rule to show cause, our primary reason for the action being that the child was then living with the maternal grandparents and we were of the belief that a change in his care should not be effected until after we were afforded an opportunity to examine the evidence on which the complained of ruling was based.
The principles of law appropriate to this cause, which are not disputed by the parties, are well stated in Guillory v. Guillory, 221 La. 374, 59 So.2d 424, 425. Therein we said: “A mother is entitled to the custody of her child unless it be shown that she is morally unfit or that it would be a greater advantage to award its custody to its father. The-paramount consideration in determining to whom the custody of the child should be granted is the welfare of the child. In awarding the custody of the child a large discretion is left to the trial judge, which, of course, is subject to review. A reasonable latitude must be left to the trial judge and his judgment is entitled to great weight. * *• * This case, as in many cases involving the custody of children, resolves itself into a question of fact. * * * ” (Quoted with approval in State ex rel. Magliore v. Saragusa, 229 La. 967, 87 So.2d 309.)
Accordingly, the question for determination here is whether, under the evidence adduced, the trial judge abused his discretion in awarding legal custody of the child to plaintiff, the father.
This defendant admits (and the record otherwise conclusively shows) that she voluntarily, without any provocation on the . part of plaintiff, abandoned the marital domicile shortly before the child was born. And she has since steadfastly refused to return notwithstanding the repeated attempts of plaintiff at reconciliation, even his enlisting the aid of the trial judge (after this suit was filed) toward that end. Her only reason for leaving, to quote from her testimony, appears to be:
“Q. Mrs. Drouin, were you in love with your husband at the time that you separated from him?
“A. No, sir, I don’t think I was. I think that’s why I separated from him.
*819 “Q. Do you now think that you were in love with him at the time you married him?
“A. No, sir.”
Principally, the son has been in the care of his maternal grandparents at their home in Mansura, Avoyelles Parish, in which city plaintiff also resides with his parents. Pursuant to an agreement with the defendant, however, plaintiff has had such child at his parents’ home during some of the daylight hours (approximately seven) of each Tuesday, Thursday and Sunday. Clothes and accommodations for him have been provided in the latter place, and there he will be cared for if the custody ruling of the trial judge is approved by us.
Since June, 1957 the defendant (she was then seventeen years of age) has lived in New Orleans in an apartment at the Claiborne Towers. In that city she attends a business college, and she also does studio modeling work, during five days of each week. On week ends, occasionally- — approximately once every three weeks and sometimes then for only a Sunday — she visits her parents in Mansura, some 180 miles from her present New Orleans residence.
There is no evidence disclosing that either plaintiff or defendant is morally unfit to rear the child. Furthermore, it appears that the homes of both the maternal and paternal grandparents are highly suitable and acceptable as places for properly rearing the child.
For succeeding in this court the defendant relies solely on the usually prevailing paramount right of the mother to the legal custody of her child. On the other hand the plaintiff contends that in the instant case such right (to which he gives recognition) should not be enforced because a ruling in favor of the defendant will in effect place the actual custody in the maternal grandparents (not the mother), his custody right being superior to theirs; and, further, that it is to the best interest of the child, a boy, to be reared by him.
In awarding the legal custody to plaintiff the trial judge, in his written reasons therefor, observed: “Defendant herself has not now the custody of the child. The child is presently with its maternal grandparents and there is no question but that at the present time and for the unforeseeable future if the child were granted to defendant it would in fact result in the grandparents and not the defendant having custody.
“ * * * The father of this child has done everything within his power to induce his wife to return to him so that they might make a success of their marriage not only for their own sake but above all for the welfare of their baby son. Not only has the plaintiff personally attempted to secure this result but he has enlisted the efforts of others in that direction including the Court itself which has twice had a conference with the defendant in a fruit *821 less effort to get her to return to her husband. All of these efforts have been of no avail and she has firmly and persistently adhered to a course which must inevitably bring sorrow and suffering to all concerned particularly to the baby boy who is a most innocent victim of circumstances entirely beyond his control.
“There is no question but that the plaintiff is lavish in his love and affection for his child while the mother on the other hand demonstrates an apparent lack of interest and indifference which the Court is unable to comprehend.
“ * * * There can be no question that plaintiff dearly loves his child. He is apparently dependable and responsible and dedicated to the welfare of his boy. He is making a good living, has a good home and his parents are quite comfortably fixed.
“ * * * Everything considered therefore, the Court is of the opinion that the welfare of plaintiff’s baby son would be best served by having him live with his father instead of the maternal grandparents. * * * ”
I cannot say that the trial judge abused the discretion vested in him in so concluding. As pointed out above the defendant has almost entirely relinquished the care of the child to the maternal grandparents who live some 180 miles from her present residence and with whom she visits rather infrequently. And by such voluntary action, without any provocation on the part of plaintiff, she has placed herself in the position of not being able (or perhaps not caring) to give the child her love and attention that he deserves and should have.
Plaintiff, on the contrary, desires to and can suitably care for the child and bestow appropriate affection on him. Too, the physical transfer of the child to the home of plaintiff’s parents (also plaintiff’s home) will have no harmful effect on him for there, as before shown, he has heretofore spent parts of three days each week. Moreover, under the district court’s ruling the defendant can be with him as much as she has been under her above described voluntary arrangement, the custody award to plaintiff having been made “ * * * subject to liberal visitation privileges in favor of the defendant, mother, she being given the right and privilege of seeing and visiting with said child and having him visit with her and her parents at all reasonable times, especially on the week ends when she visits her parents in Mansura from her present residence in New Orleans, * * * »
The cases principally relied on by the defendant are inapposite, they being White v. Broussard, 206 La. 25, 18 So.2d 641, Willis v. Willis, 209 La. 205, 24 So.2d 378, Veillon v. Landreneau, 209 La. 1060, 26 *823 So.2d 139 and State ex rel. Morrison v. Morrison, 212 La. 463, 32 So.2d 847. Implicit in the opinion in each of them is the finding of the court that (unlike the situation here) the mother, to whom legal custody was awarded, could and would herself afford the child loving care, attention and protection. That is true also with respect to the opinion in Cannon v. Cannon, 225 La. 874, 74 So.2d 147, from which the majority quoted approvingly herein.
On behalf of defendant it is argued that although she resides in an apartment in Claiborne Towers in New Orleans her grandmother lives there also. In her testimony, however, she admits that such relative travels considerably and hence is not with her all of the time.
The defendant further urges that she is in New Orleans temporarily and only for the purpose of getting a business education in order that she can take care of the child. But she concedes that she had never considered the possibility of taking the same course at a nearby school, as she might have done (in Alexandria or Cottonport), so that her son could receive her attention and love. The only reason given for this omission was that “I didn’t think about it.” On this point the trial judge appropriately said: “* * * It is quite clear that if her purpose is to get an adequate business school education she could do so either at the Cottonport Trade School which is only some five or six miles from her father’s home in Mansura or from a business college in Alexandria which is only thirty-five miles from Mansura. In spite of this situation she chooses to go to school in New Orleans which puts her some one hundred eighty-miles from her said child.”
Again, with reference to the schooling of defendant, her counsel argue that she will soon be finished and perhaps will obtain a position near Mansura so that she can be with the child. However, like the district judge we should determine the issues on the basis of the facts as they existed at the time of the trial (those shown by the transcript of testimony); and I agree with him that no evidence was adduced disclosing that the defendant seriously desires, or will be in a position, to discharge her parental duties at any time in the foreseeable future. Unquestionably, this failure of proof on the part of the defendant is an important consideration in the application here of Civil Code, Article 157 which recites: “In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. * * * ” As before shown, this plaintiff (the child’s father) obtained the judgment of separation rendered herein.
*825 Also, in determining this dispute, it is well to remember that custody judgments are not final. If within a reasonable time this defendant displays her willingness and eagerness to give the child her love and devotion, and is able to care for him, she can again seek his custody.
Therefore, I am of the opinion that the writ, order and rule heretofore issued by us should be recalled and vacated and that the judgment of the district court should be affirmed.