HERGET, Judge.
Van Earl Ballard in suit number 18,210 of the Twenty-First Judicial District Court instituted ’a suit against his wife, Mrs. Mary Jo Waller Ballard, for a divorce based on the ground of adultery and for the custody of the minor child born of the marriage, and by supplemental petition filed on June 5, 1955 after alleging additional acts of adultery, alternatively pleaded for judgment of separation a mensa et thoro in his favor on the ground of cruel treatment and further asked for custody of the minor child.
*323 In suit number 18,542 Mary Jo Ballard filed suit against Van Earl Ballard seeking a judgment of separation a mensa et thoro against the defendant on the ground of abandonment and in said suit also sought the custody and control of the child bom of the marriage. In suit number 18,210 she had also filed an answer and reconven-tional demand seeking a separation a mensa et thoro in the reconventional demand. The two cases were consolidated for trial and after trial, for written reasons assigned, the Court rendered judgment in favor of Van Earl Ballard and against Mary Jo Waller Ballard decreeing a separation a mensa et thoro and awarding the custody of the child to the father conditioned on the child remaining with the paternal grandparents, Mr. and Mrs. Guy Ballard, with visitation rights granted to the mother, Mrs. Mary Jo Waller Ballard. No appeals were taken from these judgments, which were rendered, read and signed in 1956.
In suits, numbers 18,210; 18,542 and 19,627, on January 7, 1958 Mrs. Mary Jo Waller Ballard, by rule, sought to obtain the custody of her child and in said rule there appears the allegation in paragraph 4 that in suit numbered 19,627 an absolute divorce decree was awarded to Van Earl Ballard against mover, Mrs. Mary Jo Waller Ballard, and further decreeing that the custody of the minor child be awarded to Van Earl Ballard under the same terms and conditions as had been decreed in the two consolidated cases, numbers 18,210 and 18,542.
It is from the judgment on the rule that an appeal was taken and perfected by Mrs. Mary Jo Waller Ballard to the Supreme Court of Louisiana and, under the provisions of Sections 29 and 30 of Article 7 of the LSA Constitution of Louisiana, as amended, the appeal was transferred by the Supreme Court to this Court for decision.
The record on this appeal does not contain suit number 19,627, so that our information as to said suit is garnered only from the affirmative allegation referred to. Concededly, however, by counsel for both Mr. Ballard and Mrs. Ballard, the sole issue presented by this appeal is the judgment of the Trial Court dismissing the rule of Mrs. Mary Jo Waller Ballard seeking the custody of the minor child, Van Earl Ballard, Jr., born of the marriage.
The record reveals that Van Earl Ballard, Jr. was born July 24, 1949 to appellant and appellee while the parties resided at the home of the paternal grandparents, Mr. and Mrs. Guy Ballard. The evidence further reveals that in his infancy Mr. and Mrs. Guy Ballard at that time took partial care of the child. The appellant and appellee moved from the premises of Mr. and Mrs. Guy Ballard and established their own home, however, upon the happening 'of difficulties which resulted in the institution of the suits above recited, the child, Van- Earl Ballard, Jr., on November 14, 1954, was returned to the home of the grandparents, Mr. and Mrs. Guy Ballard, where he has remained ever since. As recited in the decree of the Trial Court, the care and custody of the child was awarded to his father, Van Earl Ballard, but it was stipulated that the child remain in the care of and at the home of Mr. and Mrs. Guy Ballard.
In her motion and rule to have the custody of the child changed and placed in her, Mrs. Mary Jo Waller Ballard made the allegation that the home conditions of Mr. and Mrs. Guy Ballard had changed in that Mr. Ballard had died; that the father, Van Earl Ballard, was home at irregular times; that the paternal grandmother had gone to Texas and that the child was permitted to hunt in the woods back of the Ballard home with a BB gun and that the mother, under the law, was entitled to the custody of the child.
The Trial Judge, for oral reasons assigned which were dictated in the record, reviewed the evidence produced on the trial of the rule and found that the conditions in *324 the home of Mrs. Guy H. Ballard had not materially changed since the date of the judgment awarding the custody to the father under the conditions that the child remain in the home of Mr. and Mrs. Guy Ballard ; that though the evidence showed that Mrs. Guy Ballard had, upon the death of her husband, gone to Texas for a brief visit of a week or two to recover from the ordeal of nursing her husband and the shock of his death and funeral, she had returned to her home, was present in court on the day of the trial of the rule and testified that she had no intention of leaving the domicile permanently and that in her absence the child had remained in the home with his uncle and aunt, Mr. and Mrs. Shelton Ballard. Furthermore, the Trial Court was of the opinion that there had been no showing whatever that the child had in any way been neglected or that permitting him to visit in the neighborhood over night with friends of good character had in any way been detrimental to the welfare of the child and, from its own observation, the child was well cared for and there was no basis on which the custody should be changed. The Court was further of the opinion that the evidence did not show the father was inattentive or that he was absent from the home of his mother, Mrs. Guy Ballard, for extended periods of time. The Judge expressed the view, with which we are in full accord, that to permit a boy of the age of Van Earl Ballard, Jr., who at that time was nine years of age and who had lived in the country his entire life, to go hunting with a BB gun in the woods on the Ballard place a short distance from the home did not in any way give evidence of neglect. Indeed, we are of the opinion that such activity by a young man of the age of nine years in the restricted area of his home serves to permit the child to indulge in wholesome recreation and is fraught with no more danger than any normal pursuit of boyhood sports and recreation would entail.
From our examination of the evidence it appears that the Trial Judge gave unusual personal attention to the serious question presented to him of fixing the custody of this child and his reasons for granting the custody of the child to the father with the stipulation that the child remain in the home of the paternal grandparents show an exercise of that discretion which is vested in the Trial Court to give consideration to the paramount issue to be settled in such instances which is, that the custody of the child should be so fixed as to guarantee that the best interest and welfare of the child be protected. While it is true in the absence of showing that the mother is morally unfit to have the custody she is preferred over the father in awarding the custody of a child of tender age, but in this case where the evidence reveals that the child has been in the home of the paternal grandparents since 1954, is well taken care of from a moral, physical and spiritual standpoint, and especially giving consideration to the generous visitation rights awarded to the mother and in view of the fact that the mother is not now remarried, does not have a position of employment or habitation which would permit her to provide the child with more adequate physical and moral care, and where it appears that the welfare of the child will best be served by permitting the custody to remain as fixed by the Trial Judge, his ruling thereon will not be disturbed. State ex rel. Theriot v. Pulling et al.; Pulling v. Theriot, 209 La. 871, 25 So.2d 620; State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888; State ex rel. Magliore v. Saragusa, 229 La. 967, 968, 87 So.2d 309.
The case of Guillory v. Guillory, 221 La. 374, 59 So.2d 424, factually is strikingly similar to the issues presented on this appeal. The Supreme Court, through Justice Ponder, observed, at page 425 (So.2d):
“A mother is entitled to the custody of her child unless it be shown that she is morally unfit or that it would be a greater advantage to award its custody to its father. The paramount consideration in determining to whom the *325 custody of the child should be granted is the welfare of the child. In awarding the custody of the child a large discretion is left to the trial judge, which, of course, is subject to review. A reasonable latitude must be left to the trial judge and his judgment is entitled to great weight. These pronouncements of law are so well established and have been so often repeated in the jurisprudence of this state that it is unnecessary to cite authorities to support them. There seems to be no dispute regarding them other than that appellant contends that her moral fitness must be determined by the facts and circumstances existing at the time the rule was filed. We cannot agree with the contention because all of the facts and circumstances from the time that the appellant abandoned her husband and child must be taken into consideration in arriving at what is the best interest of the child. This case, as in many cases involving the custody of children, resolves itself into a question of fact. Under the facts in the case, we cannot say that the trial judge abused his discretion. The child since its infancy has spent a greater part of its time with its paternal grandparents where its father and it are- now living. The evidence shows that this is a respectable home and that the child is well cared for. It is presently attending school. The appellant makes much of the fact that the father of the child subsequently married and separated from his second wife and the fact that he is now employed as the manager of a night-club, some eighty miles away. She seems to think that because the father only visits the child two or three times a week should have a bearing on the case. However, she does not point out a single fact to show the child is not receiving every care in the home of its grandparents. We can only determine the future from what has happened in the past. The father has always thought of and looked after the welfare of the child, but the appellant has not. Under the circumstances we cannot say that it would be to the best interest of the child to change the custody of it or that the trial judge abused his discretion in refusing to do so.”
We are of the opinion that the Trial Judge in this case has wisely exercised that discretion vested in him and we are in accord with his refusal to change the custody of the child and, accordingly, for these reasons the judgment is affirmed.
Affirmed.