GLADNEY, Judge.
This appeal arises from a judgment of the Juvenile Court of Caddo Parish denying Mrs. Lorraine Thornton Schilling a final decree of adoption of Katherine Jo Robbins and revoking and setting aside a previously granted interlocutory decree.
Mrs. Schilling, a widow and the maternal grandmother of the five year old child sought to be adopted, initiated this proceeding on June 22, 1964 by filing a petition governed by the provisions of LSA-R.S. 9:421-9:441, attaching to the petition the consent to the adoption signed by Katherine Annette Schilling Robbins, the natural mother of the child and daughter of Mrs. Schilling. On March 10, 1964 there was judgment granting Mrs. Schilling an interlocutory decree of adoption and awarding to her the temporary custody of the child. In due time an application was filed by the petitioner for a final decree of adoption. It was met with opposition from the natural mother, who had become the wife of Gary James White. Following disposal of certain proceedings of a preliminary nature the opposition was placed at issue by the answer of the mother, Mrs. White, and heard by the court. The judgment which is the subject of this appeal was signed on May 20, 1965. It rejected the demands of the grandmother, Mrs. Schilling.
The opponent of the adoption initially raised the question as to whether the interlocutory decree granted by the court may be considered valid as opponent alleges that her consent to the adoption was obtained through fraud, deception and undue influence. The trial judge gave careful attention to this issue and decided it adversely to opponent, finding that she was a person of average intelligence and was cognizant of the consequences of her act in consenting to and permitting her mother to adopt *227 'her child; and that no one exercised any undue influence or perpetrated any fraud ■upon her in order to obtain her consent to the adoption. After a careful review of all pertinent evidence we find the record amply -supports the finding of the trial court.
The primary issue presented herein, and •one requiring our most careful consideration, is, as ably stated by the trial judge: Is it to the best interest of this child that she be adopted by the petitioner?
Bearing directly on this question is LSA-R.S. 9:431 and 9:432, subd. B, parts of ■which read:
“431.
At any time before the entry of the final decree of adoption the court for ■good cause, * * * may revoke its interlocutory decree * * * on the motion of * * * any person interested in the child. * * * ”
•"432.
******
B. The court, after hearing and ■and after taking into consideration information from all sources concerning the adoption, may enter a final decree -of adoption; or it may deny the adoption. The basic consideration for this •decree and all others shall be the best interest of the child. * * * ”
The issue is factual in its nature and the evidence developed upon the hearing before the trial court is enlightening and •essential for a proper determination of the future custody of the child.
Katherine Annette Schilling and Elro Robbins were married in August of 1959 and of this marriage Katherine Jo Robbins was bom on August 15, 1960. The couple immediately moved into the home of Mrs. Schilling and lived with her for approximately a year while their marrriage lasted, except for a short period when Mr. and Mrs. Robbins lived in Coushatta, Louisiana. Prior to the birth of the only child born of said marriage, Robbins abandoned his wife and subsequently on March 29, 1962 Mrs. Robbins secured a divorce from her husband. She continued to reside in the home of her mother and during this time she was employed at a salary of about $250.00 per month, which was the major source of income used to support Mrs. Schilling, the baby and herself. It appears that the only other source of income amounted to about $40.00 per month earned by Mrs. Schilling as a seamstress. During the early part of 1964 and prior to the commencement of these adoption proceedings Mrs. Schilling learned that she could qualify for Social Security amounting to approximately $150.-00 per month provided she were to adopt the child. It was this factor primarily, according to Mrs. Robbins, that caused her to execute a notarial consent of adoption in favor of her mother. Shortly after signing this consent Mrs. Robbins left her mother’s home and moved to Bossier City. On March 28, 1964 she was married to Gary White, with whom she was living at the time of these adoption proceedings. Mr. and Mrs. White have one child, a girl, born to them on October 19, 1964. Gary White is a member of the Air Force, and draws pay of $247.10 per month. If Mrs. White is given custody of the child his salary will be increased by the sum of $20.00 per month.
In explanation of their failure to oppose the application of Mrs. Schilling for an interlocutory decree of adoption, Mrs. White and her husband testified that at that time they were unable to raise the amount necessary to pay for attorney’s fees to oppose the adoption proceedings. Later they obtained a loan and filed on November 12, 1964 this opposition to the final decree.
Mrs. Schilling, the petitioner for the adoption of Katherine Jo Robbins, is a widow, 52 years of age, and appears to have limited earning capacity. Her daughter, Mrs. White, is 23 years of age, and Gary White a few years younger. His *228 earning potential is obviously larger than that of Mrs. Schilling. The record consisting of two volumes contains the testimony of some twenty witnesses, all of whom have firmly placed themselves either on the side of Mrs. Schilling or on the side of Mrs. White. Accusations of immorality and indiscretions apparently designed to destroy the character of all members of the Scnilling family were freely made. If accepted literally a serious question might arise as to whether Mrs. Schilling or her daughter are fully qualified to have the custody of the five year old child. The family seems hopelessly split with the maternal grandparents of Mrs. White siding with Mrs. Schilling and the maternal aunt and uncle of Mrs. White siding with her.
The trial judge in giving his reasons for awarding the custody of the child stated:
“During the course of this hearing many harsh things were said concerning Katherine Annette Schilling Robbins White; and many harsh things were said about the petitioner, Mrs. Lorraine Thornton Schilling. This case points up one of the many dangers and hazards when a member of the child’s family attempts to complete an adoption. The conflict between this mother and grandmother will affect this child as long as she shall live.
“There is a possibility that if the adoption is granted or denied that the wall built up between this mother and grandmother will become more difficult to surmount. The Court sincerely hopes this is not the case and that this entire family can set aside its differences, including the parents, grandparents, aunts and uncles, and become truly a family and consider the welfare of not only this child, but all other members of this family group.
“If the adoption is granted the child then will become the daughter of petitioner. This definitely would not be a bad situation. However, she would be in a home with no father or person to act in the place of her father.
“We must weigh this against the home offered by the opponent, the natural mother.
“Although this mother consented to her child’s adoption she is now offering a home with a father, a sister, and grandparents if all are truly interested in the welfare of the child. This fits the needs of this child in order that she may grow up normally and enjoy all the benefits of a home and family.
“It is a basic inherent right of every child, where possible, to grow up in his own home, with his own mother and own father. Living in the home with one natural parent and one substitute parent comes closer to filling this basic need and right of Katherine Jo Robbins.”
The record reflects that the marriage of Katherine White and her husband Gary so far has been a successful one with each represented as a good parent, and with increasing maturity both appear to be meeting properly their responsibilities. Likewise it is expected that their financial condition will continue to improve. We discern no good reason why these parents cannot fully meet their responsibilities should Katherine Jo Robbins be permanently placed in their home.
 In reaching this conclusion we are unable to find any basis for error in the decision of the trial judge. The circumstances in this case specially require that a great amount of discretion be vested in the trier of facts whose observation as to the credibility and appearances of the interested parties and their witnesses necessarily afforded important assistance in the resolution of the factual issues presented. This determination follows the well established legal principle that the trial court’s finding of the question of what is for the best interest for the child is to be given great weight and is not to be overturned unless the appellate court finds the trial court *229 has manifestly absued its discretion. State ex rel. Johnson v. Ashmore, 197 La. 971, 2 So.2d 897 (1941); Black v. Black, 205 La. 861, 18 So.2d 321 (1944); Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456 (1949); Kieffer v. Heriard, 221 La. 151, 58 So.2d 836 (1952); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952); State ex rel. Magliore v. Saragusa, 229 La. 967, 87 So.2d 309 (1956); Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Gentry v. Gentry, La.App., 136 So.2d 418 (1st Cir. 1961); Hebert v. Hebert, La.App., 159 So. 2d 537 (3rd Cir. 1964); and State ex rel. Paul v. Department of Public Welfare, La. App., 170 So.2d 549 (3rd Cir. 1965).
For the reasons hereinabove set forth, the judgment is affirmed at appellant’s cost.