McBRIDE, Judge.
This is a proceeding by habeas corpus brought by Mrs. Enoree Brady Murtishaw, a resident of California, who seeks to obtain possession and control of her granddaughter Roxanne Brady, who was a little over three years old when this proceeding was filed. The respondent is Joann B. Brady, widow of James T. Brady, the father of the child. Brady is the son of relatrix, issue of her second marriage.
After a trial of the matter the court below rendered judgment recalling the writ of habeas corpus and placing the child in the custody of respondent. The relatrix has taken this appeal.
It is well settled that in contests of the type before us the welfare of the child is the court’s primary consideration. It is likewise well established in our jurisprudence that a reasonable latitude must be left to the trial judge in determining matters affecting the welfare and custody of children, and his judgment, based upon the facts disclosed in any given case, is entitled to great weight. State ex rel. Magliore v. Saragusa, 229 La. 967, 87 So.2d 309; Guillory v. Guillory, 221 La. 374, 59 So.2d 424; State ex rel. Johnson v. Ashmore, 197 La. 971, 2 So.2d 897.
The child Roxanne was born in Albany, Georgia, on November 21, 1962, issue of the marriage of James T. Brady and his first wife Gwen Burdette. Some 11 months after the birth of the child Gwen deserted Brady and the child. Shortly after this separation Brady permitted his mother, the relatrix, who also lived in Albany with her fourth husband, to take the child. Subsequently Brady came to the Parish of Jefferson, married respondent and established a matrimonial domicile there. About seven months after the marriage of Brady and respondent the relatrix brought Roxanne from Albany, Georgia, and delivered her to Brady and respondent in Jefferson Parish and the child remained with her father and stepmother until Brady’s death on January 14, 1966. Since her husband’s death respondent has had possession of and has cared for Brady’s child. She also has a child of her own, issue of her marriage with Brady, who was born subsequent to the trial of the case below.
*700 In his reasons for judgment the trial judge wrote:
“* * * There was a good family-relationship all around until such time as the child’s father died, and now the paternal grandmother is seeking to regain custody from the child’s step-mother. The Court feels that both of these are quite capable of taking care of this child, and indeed it appears that this suit occurs mainly as a result of the love and affection that each party has for the child and a desire to ensure the child’s best welfare. The question presents itself as to whether the best interest of the child would be served by awarding custody to the blood relation, the paternal grandmother, or leaving custody with the step-mother who has cared for the child over the past year. The little girl was present in the courtroom during the proceedings, and the Court must remark in passing that she appears to be a very pretty little girl, well behaved, and apparently unaware of the struggle over her custody.
“The Court is of the opinion that the custody should be permitted to remain where it now is. Primarily this decision is based upon the fact that the stepmother is much younger than the grandmother and nearer the age of the natural mother of the child. Additionally, there was evidence to show that the step-mother is pregnant at the present time, and that if the circumstances are favorable, there will be a half-brother or sister in the near future to cement a further family relationship between these parties. Additionally, the child now seems to be well oriented and well imbedded into the family ties of the defendant, and the Court hesitates to disturb such a good relationship, even though the evidence shows that the paternal grandmother took the very best care of this same child when she received custody of it at a very confusing time when the child was in tragic condition.”
We quite agree with the above sentiments.
The evidence discloses the respective environments of relatrix and respondent arer
The relatrix lives in California with her fourth husband and three of his children from a former marriage. Relatrix’s first-marriage ended with a judicial annulment thereof and her second and third marriages, terminated in divorce. Her present husband is a Master Sergeant in the U. S. Air Force- and for the present is stationed at Travis: Air Base, California.
The respondent, since Brady’s death, has. been living with her mother and stepfather in their home in Bridge City, Jefferson Parish, amid pleasant and happy surroundings. Respondent, who was pregnant at the time of the trial, testified that she intended, as soon as possible after her baby was born, to accept a job as waitress and expected to earn wages adequate to keep her own baby and Roxanne in comfortable circumstances.
Respondent’s testimony manifests her love and devotion for Roxanne, and also reflects the child’s feelings toward respondent. Of the latter respondent testified:
“Q. Since the time the child came to your house, has she remained there?
“A. She sure has.
“Q. Have you treated her there as your own?
“A. She is just like my own and could not be any more. She loves me like I am her real mother. She depends on me and she loves me; she does not know anyone else has been her mother.”
On the other hand the child does not know her grandmother. During the year the latter had Roxanne in her keeping the child was an infant and undoubtedly has no recollection at all of her stay with her grandmother.
*701 The cardinal point in the case is whether it would he to the best interest of Roxanne to permit the child and her stepmother, between whom a great bond of affection exists, to remain together, or to grant custody to the grandmother, who undoubtedly also loves the child, but whom the child does not know. Moreover, the grandmother lives in a distant state with her husband and his three children who are complete strangers to the child. Also to be considered is the fact that relatrix’s husband is undoubtedly only temporarily stationed in California subject to future transfer to other bases in connection with his military career. The possibility of such transfer or transfers might tend to be detrimental to the child’s welfare.
The trial court was of the opinion that Roxanne is well, happy and contented with her stepmother who has given her the love and affection of a real mother and we believe this happiness and welfare, a paramount consideration in this case, would best be served by leaving custody where it is, at least for the present.
Counsel for relatrix makes the argument that the grandmother has a preferential right to the custody of the child for the reason that R.C.C. art. 229 provides that the relatives in the direct ascending line are bound to maintain their needy descendants, the contention being that whereas the re-latrix is bound by the obligation to maintain the child, she is more entitled to its custody than the stepmother. We see no merit in this argument whatsoever. In many cases, which need not be cited, the father of the child was not given preferred consideration with reference to the child’s custody notwithstanding that the father is always under the obligation of maintaining his minor child.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.