122 So.2d 90

Norman Keith MESSNER

v.

Billie Jean Watkins MESSNER.

No. 44270.

June 29, 1960.

Love & Rigby, Shreveport, for plaintiff-appellant.

Pugh & Schober, Shreveport, for defendant-appellee.

SIMON, Justice.

Norman Keith Messner instituted habeas corpus proceedings to obtain the care and custody of his five minor children who have been and presently are in the custody of his divorced wife, Billie Jean Watkins Messner. The lower court rendered judgment rejecting Messner's demands and recalling and setting aside the writ of habeas

corpus theretofore granted. From this judgment he has appealed.

Billie Jean and Norman Keith Messner were married on June 7, 1951, at Texarkana, Arkansas. Of this union three children were born. Defendant was the mother of two other children who were legally adopted by plaintiff after his marriage to the defendant. The children's ages ranged between one and one-half to nine years at the time of the hearing below in 1958. In 1956, their matrimonial domicile being in Longview, plaintiff and defendant separated, she thereupon returning to her pre-marriage domicile in Shreveport (being also the domicile of her parents), taking with her these five children.

By judgment rendered on January 4, 1957, plaintiff was awarded a divorce decree and awarded the custody of the five minor children by the 124th Judicial District Court of Gregg County, Texas, though at the time these proceedings were had, and subsequent thereto, the children were in the custody of their mother in Shreveport, Louisiana. In this proceeding she made no appearance.

On January 6, 1957, the First Judicial District Court in and for Caddo Parish, Louisiana, granted Mrs. Messner a judgment of separation from bed and board from her husband and custody of the five children, the husband, still a resident of Texas, being represented by a Curator-ad-

Hoc, against whom these proceedings were contradictorily conducted.

Shortly after filing her suit for a judicial separation, Mrs. Messner became acquainted with Lt. Pete Kane, an Air Force officer then stationed at Barksdale Air Force near Shreveport, Louisiana, whom she frequently dated. Desiring to marry Lt. Kane, Mrs. Messner sought the advice of a reputable Shreveport attorney concerning the validity of the Texas divorce, he having previously represented her in her separation proceedings. Upon being advised that the Texas divorce was invalid, she thereupon filed proceedings for a final divorce, one year having elapsed without reconciliation from the date of her judgment of separation. A plea of res judicata to her divorce proceedings was filed by Messner, which was sustained, her suit being dismissed, on May 8, 1958. In view of the judicially declared validity of the decree rendered by the Texas court, as aforestated, Mrs. Messner and Lt. Kane were married on May 22, 1958, Messner filed these habeas proceedings on May 23, 1958.

In his petition for custody of the children plaintiff alleged that defendant is morally unfit to have their custody; that she has constantly neglected their mental, moral and physical welfare. He further alleged that defendant committed numerous acts of adultery with Lt. Kane, both occupying and living in the same apartment prior to their marriage, holding themselves

out as husband and wife in the presence of the children.

In her answer defendant denied these allegations and countered that the reason for her separation from Messner in 1956, while living in Texas, was his constant attention to another woman whom he proposed a desire to, and subsequently did, marry.

It appears that plaintiff is a musician in a dance band, filling engagements throughout the country, spending only a few weeks each year at his home in Longview, Texas. Defendant had worked as a hostess in cocktail lounges both before her marriage to plaintiff and after her separation. The evidence shows that until October 1957 plaintiff paid defendant $35 weekly for the support of the children, after which time he made only one payment in the amount of $25. The record reveals that plaintiff and his father and mother frequently visited defendant's apartment during the year and one-half preceding the habeas corpus proceedings; that the grandparents brought clothing and food to the children, and saw Lt. Kane in the apartment on these visits. The grandparents testified that the children were dirty, unkempt and anemic, and that some time prior to these proceedings their suspicions were aroused as to the true relationship between defendant and Lt. Kane.

On the other hand, defendant's parents, who lived in the apartment upstairs, stated that they visited their daughter almost daily and had observed nothing improper in her behavior with Lt. Kane. This evidence was substantiated by friends and neighbors, who also testified that the children were well taken care of physically, and that they never observed any neglectfulness on the part of the mother.

The trial judge concluded that the evidence failed to substantiate the charges urged by plaintiff, there being no convincing proof that the mother was thoughtless to the physical and moral well-being of the children or improvident and neglectful of her motherly duties. His personal observations in the courtroom aided him in so concluding.

As to the alleged illicit relations between Mrs. Messner and Lt. Kane, Mrs. Messner admitted at the trial that she and Lt. Kane occupied the same bedroom on a few occasions, but that the primary purpose of Lt. Kane's many visits was to assist her in the care of the children during her absence at work; that in order to support the children it was necessary for her to hold two jobs, one during the day and one at night, working until the early morning hours. After Messner fell behind in his payments for support of the children, it was agreed between Mrs. Messner and Lt. Kane that, in order to save baby-sitter expense, she should give up her daytime employment so as to personally

attend to the needs of the children during the day, and allow Lt. Kane to stay with them while she worked at night. It is shown that Lt. Kane purchased all the groceries for their needs at the commissary at Barksdale Base, and in turn Mrs. Messner cooked his meals and washed and ironed his clothes. During Lt. Kane's short absences from the apartment to bring Mrs. Messner to and from work, some member of Mrs. Messner's family, her father, mother or one of her sisters (all occupants of an apartment on the upper floor), would sit with the children until his or their return.

Plaintiff introduced the testimony of his two private investigators who testified that on three out of four nights during which they observed Mrs. Messner's apartment, Lt. Kane's automobile was parked outside all night.

Two of the children, aged nine and seven years, were called as witnesses for the plaintiff, and both testified that Lt. Kane and their mother sometimes slept together prior to their marriage. The district judge attached no importance to the testimony of the two children, one desirous of living with the father, the other with her mother, as it was brought out in questioning them

that they were immeasurably influenced by promises of favors and gifts.

The trial judge also opined that from all the testimony, most of which was, in his view, biased and prejudiced for or against the respective parties, he was unable to conclude that Mrs. Messner's allowing Lt. Kane to spend several nights with her was the rule rather than the exception. In view of this conclusion he felt that there would have to be more specific evidence of the continued illicit relationship than was shown, and it would have to be more flagrant and in the presence of the children to deprive defendant of their custody. Since the defendant and Lt. Kane were married at the time of the trial and the illicit relationship complained of no longer existed, the district judge rejected plaintiff's demands for custody of the children.

On this appeal plaintiff contends that the trial judge was in error in holding that the evidence did not establish that the children were neglected and ill-kept and in holding that the illicit relationship between defendant and Lt. Kane was only occasional and did not constitute a course of conduct on her part sufficient to deprive her of the custody of the children because of her moral unfitness.

1. LSA–C.C. Article 157: "In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party * * *."

■ Under the law [1] and settled jurisprudence of this State, the trial judge has the discretion of awarding the custody of a child whose parents are legally divorced in accordance with the circumstances existing when he is called to act. Although this discretion is subject to review and control by us, we are usually reluctant to reverse a judgment in these instances, unless we find and conclude that the trial judge has abused the discretion vested in him. Black v. Black, 205 La. 861, 18 So. 2d 321; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456; Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3.

■ We have also consistently recognized that the paramount consideration in determining to whom the custody of a child should be given after the divorce, a complex and grievous responsibility which too often preys upon one's heart, is the welfare, happiness and best interest of the child. In doing justice to this principle this Court has consistently awarded the custody of minor children to the mother unless she has been found morally or otherwise unfit, or unless she is incapable of giving them proper care and guidance. Sampognaro v. Sampognaro, supra; Pepiton v. Pepiton, supra; Cannon v. Cannon, 225 La. 874, 74 So.2d 147; Salley v. Salley, 238 La. 691, 116 So.2d 296; Dungan v. Dungan, 239 La. 733, 119 So.2d 843.

■ The evidence adduced at the trial with respect to the neglect by defendant of the physical welfare of the children does not appear to support plaintiff's contentions and the district judge who heard the evidence and observed the children was of the opinion that they were well cared for. Insofar as the physical welfare of the children is concerned, therefore, we cannot say that the trial judge abused his discretion in awarding the custody of the children to their mother in that respect.

The principal issue presented for our consideration is whether the illicit relationship between defendant and Lt. Kane prior to their marriage and following the divorce in a Texas court, renders the mother morally unfit to retain the care and custody of her minor children. Plaintiff urges that the facts of the instant case are comparable to those in Kieffer v. Heriard, supra; and Guillory v. Guillory, 221 La. 374, 59 So.2d 424, in which this Court upheld the district judge in depriving the mother of the custody of her children because of her moral unfitness and misconduct.

The salient factual features of these cases render them clearly inapplicable to and distinguishable from the instant case. In the Guillory case, the mother deserted her husband and child for another man with whom she lived in open adultery and concubinage until her husband secured a divorce from her on the grounds of adul-

tery, at which time he was granted the permanent custody of the child. Subsequently, she executed an affidavit before a notary public surrendering custody of the child and abandoning all of her natural rights to custody of the child in favor of its father. She thereafter married the man for whom she had abandoned her husband and child. When she later sought to obtain custody of the child two years after surrendering all of her rights as aforestated, the trial judge refused, and rightly, to take the child from the home of his grandparents where the child and his father were living and where the child had spent most of his life from infancy, this home, with its environments, being more conducive to the future welfare and happiness of the child.

In decreeing that the interest of the child was best served by allowing it to remain in the father's custody, the controlling factors impelling us to this conclusion were the facts that the mother had publicly abandoned her home, husband and child, and that the father, whose conduct was above reproach, had continued to minister in full measure to the welfare and best interest of this child, the rationale of which we are in full accord.

There is no allegation or proof that defendant in the case at bar ever abandoned her children nor surrendered her rights to them. While the evidence reveals that plaintiff has rendered his children prac-

tically no financial support since October 1957, defendant has consistently attended to their physical welfare.

In the Kieffer case the wife, while living with her husband and children maintained an adulterous relationship with her next door neighbor whose invalid wife was living with him. The affair was so flagrant that it incited gossip and condemnation in the neighborhood, and although she was often requested by her husband, his lawyer and others to refrain from her frequent visits to her neighbor's home, she refused. The mother's conduct being so notorious, the trial judge concluded that she was morally unfit to rear her children and he awarded their custody to the father. This Court held that he had not abused his discretion under these facts and circumstances.

Although plaintiff's parents testified that they believed there was an improper relationship between defendant and Lt. Kane, defendant's parents, who lived in the upstairs apartment and who almost daily visited with her and the children, and several neighbors and friends of defendant all testified that they were unaware of any illicit relationship between the defendant and Lt. Kane, nor did they observe any conduct of defendant which would have induced them to suspect any immoral conduct. Although the two oldest children stated that their mother slept with Lt. Kane before the marriage, the trial judge

who observed these two witnesses attached no substantive importance to their testimony as aforestated, and we are unable to say that the children actually knew of and understood any immoral conduct on the part of their mother. We agree with the trial judge that the evidence does not show that the illicit relationship was the rule rather than the exception.

Analyzing in substance all of the evidence in the instant case it is shown that from the date of her separation in 1956 while living in Texas, and during her residence near her parents in Shreveport, Louisiana, to which she had returned, the five minor children have been living with her to this date. To provide for their subsistence and welfare she held two jobs, one during the day and the other until the early morning hours. During these absences the children were properly looked after. Though it appears that plaintiff paid $35 to $40 per week for the support of these children from April of 1957, only one contribution of $25 was made during May of 1958 for that entire year. It also appears that she first met Lt. Kane shortly after filing suit for a judicial separation and for legal custody of the children, obtaining a judgment in her favor from the District Court of Caddo Parish on January 6, 1957. Their relationship in some respects ripened into intimacies, and planning savings for their future marriage and for the welfare of the children, they de-

cided that she would cease working at her day job, remaining home with the children, she continuing to work at night, he staying with the children until her return during the early morning hours. Under this arrangement he bought all of the groceries at the air base, and she in turn prepared his meals and washed his clothes. To carry out their marriage plans, having been advised that the Texas divorce was invalid, she filed suit for a final decree of divorce, one year having elapsed from her judicial separation. This suit was dismissed, the lower court upholding the validity of the Texas decree. Shortly thereafter and prior to the instant suit, she and Lt. Kane were married. Plaintiff does not question either the financial ability of defendant, with the assistance of her husband, Lt. Kane, he having expressed his desires to support and care for the children, or the present home environment and surroundings which is available to the children. Her love for her children has been emphatically demonstrated by her personal sacrifices and by her unyielding efforts to retain custody of her offspring. Her right to custody has been twice judicially decreed, once in the decree of judicial separation and again by the lower court in these proceedings.

Plaintiff now seeks to remove these children into his custody and place them in the home of his parents, to remove them from their home to a place outside this

State, to uproot them from the care and love of their mother to the home of paternal grandparents with whom they have not lived for a period of approximately four years, and whom they have seen only on brief and occasional visits during this time. We entertain no doubt of the love and affection these grandparents hold for these children, as has been often demonstrated during this period of time. Plaintiff is a dance band musician, requiring that he absent himself from his home travelling in various sections of the country with periodical visits to his parents' home.

This Court, in awarding the child to the mother in the case of Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311, 313, covered the situation in the instant case as follows:

"The law is well settled to the effect that in cases of custody of children, the mother is to be preferred unless she is shown to be morally unfit. The question posed here is, does the one indiscretion she has committed render her morally unfit? A person who is puritanically inclined would say that she is; one who is more practical would say she is not. Courts always endeavor, when possible, to take the practical view of such matters. We do not think that because of this one error in her life, grievous as it was, she should be deprived of the legal custody of the child, especially one of such tender age, requiring her care and attention more than that of the father. It is the child's own interest and welfare that is of paramount importance and we are sure that the district judge gave that matter due consideration when he held that at the time of the trial, the mother was not morally unfit to provide for its welfare. Should she prove to be undeserving in the future, the law has wisely reserved to the father the right to apply to the Court to have the decree of custody changed."

■ Weighing all of the evidence with care and prudence and giving effect to its just preponderance, and ever mindful of the best interests and welfare of the children, we cannot say that the trial judge abused his discretion or committed error in awarding the custody of the children to the mother, under the facts and circumstances revealed.

■ A custody award is not conclusive nor final in the sense that it cannot be changed. Willis v. Willis, 209 La. 205, 24 So.2d 378. Such a decree may be set aside, modified or changed whenever the welfare and best interests of a child can be better served.

For the reasons assigned, the judgment appealed from is affirmed, appellant to pay all costs.

HAWTHORNE, J., absent.