AYRES, Judge.
By this action plaintiff, the mother, seeks the custody of two minor children, issue of her marriage with the defendant, who are in the legal custody of defendant, their father, pursuant to a judicial decree. From a judgment maintaining custody in the defendant, plaintiff appealed.
Plaintiff and defendant were married August 9, 1954. Of their marriage two boys were born, William H. Jackson, Jr., and Thomas Harmon Jackson, whose ages are now approximately 13 and 10 years, respectively. This marriage was dissolved April 7, 1967, by a judgment of the Second Judicial District Court in and for the County of Washoe, State of Nevada, after plaintiff had acquired a residence and established a domicile in that state. Defendant made a personal appearance in that cause through his attorneys and thereby submitted himself to the jurisdiction of the court. In a finding of fact, the Nevada court concluded defendant was a proper person to have the custody of the children, subject to the plaintiff’s right of reasonable visitation and the right to have them visit her at reasonable times and places.
Plaintiff’s position is that that portion of the decree of the court awarding custody of the minors to the defendant should be ignored as having been rendered by a court which, due to the minors’ absence from that state, had no authority over them. Accordingly, plaintiff contends that the matter of custody of the children should now be determined as if this were an initial proceeding with respect to custody. On the other hand, defendant contends that plaintiff seeks a change in the decree awarding him custody and that such change should not be made except upon a showing of such change in conditions as demand it; that is, that the changed conditions under which the children are living are detrimental to their interest and welfare and that the applicant for a change can and will provide a good home and better environment if given their custody.
*225 Of primary and utmost concern is the welfare of the children involved. In a case of this character, this concern transcends the mere personal rights, wishes, and desires of either husband or wife. A consideration of the greater interest, advantage, and welfare of the minors was, as we gather from the record, the basis upon which the trial court, in the instant case, resolved the question of custody and decreed that the children remain in the custody of their father.
The father’s qualifications and fitness for the custody of his minor children are not only unquestioned but admitted by plaintiff. His love, care, and attention, given the children long prior to and constantly since the mother left the matrimonial domicile, thoroughly demonstrate his qualifications, ability, and willingness to provide for their every need. The children have continued to live in the house and neighborhood which they know as their home. Normal contacts with relatives and friends have not been disturbed. The minors have already or are about to reach the age where they will need the guidance of a father.
In July of 1967 defendant was able to obtain the services of a Mrs. Nelson, an elderly woman, to live in the home, to serve as homemaker, and to see that the children receive proper training and care. Mrs. Nelson had served a similar purpose in the home of defendant’s brother, who had lost his wife through serious illness. Mrs. Nelson had cared for the three young children in that home for over two years and until their father’s remarriage. Mrs. Nelson came to defendant’s home not unknown and untried but thoroughly experienced to cope with any problem that may arise in the family life of the children. In fact, there is no contention that the environment of the children at the present time is not of the most wholesome character.
In December of 1966, after almost 12 years of married life, plaintiff informed her husband that she no longer loved him and wanted a divorce. Defendant made every effort to dissuade his wife from ending their marriage. No contention is made that during their marriage defendant was anything other than a loving husband to his wife and a devoted father to his children.
According to statements to her psychiatrist, plaintiff never particularly liked nor wanted children. She had only acceded to her husband’s wishes in that respect and, moreover, she never professed to have any love for children but actually resented the fact that her husband wanted them. A neighbor testified that plaintiff had remarked, with reference to the responsibility of rearing the children, that she did not have much patience and had told her husband that he would have to rear the boys.
Plaintiff’s primary interests are outside of her position and obligations as a mother. It is so stated in her counsel’s brief, from which it is observed:
“It is obvious that Mrs. Jackson is a talented woman and that she has received encouragement from various people to pursue these talents. In order for her to be happy and to have the right perspective it was necessary for her to get away from the everyday routine of running a household. There was no testimony offered showing that these two children were left alone at night or that they were not properly fed, or clothed.”
That these children were not left alone and were properly fed and clothed was due to the interest and care of the father. Defendant generally prepared their breakfast, got them off to school, and assisted them at night with their homework.
During a considerable portion of their married life, and particularly during the last six months, plaintiff devoted almost all of her free time to outside interests such as, but not limited to, theatrical productions and associations with persons connected therewith. For weeks and perhaps for a month or more at a time, she was *226 never at home at night until after 10:00 or 11:00 o’clock and, on many occasions, after midnight or the early hours of the morning. She found her interests outside the home. For all practical purposes plaintiff abandoned her children to the father in order to pursue her outside interests.
In pursuing these outside interests, plaintiff formed a relationship with another man whom she received in her home. His arrival was scheduled subsequent to defendant’s departure for his employment •and the children for school, and prior to the arrival of the maid at the Jackson lióme. On one occasion, plaintiff was seen -embracing and kissing this man as he entered the front door. She admits to having gone skating alone with him and returning home about 1:30 in the morning. An aunt testified to having seen her niece’s flirtations with this man. From this record, it abundantly appears plaintiff is not of the proper temperament to rear and train these children, nor does she have any real desire to do so.
The children are now well adjusted to the situation created by plaintiff in leaving their home and seeking a divorce. They have been in the custody of their father for more than 21 months. Their living conditions are wholesome and above reproach. Their future welfare is assured so far as is humanly possible. A change in custody would only result in the minors’ insecurity and uncertainty of the future. In their present situation, they are assured of love and stability. We cannot conceive that any good purpose would be served by changing the custody of these children.
The statutory rule is that:
“In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party.” (Emphasis supplied.)
LSA-C.C. Art. 157.
This preferential exception, as observed in Blackburn v. Blackburn, 168 So.2d 898, 902 (La.App., 2d Cir.1964), is likewise subject to the exception that a mother will be denied custody of the children of a marriage even though there may be no proof of moral unfitness where it appears that she either cannot or does not provide a proper and wholesome homelike atmosphere in which to rear the children. See, also:
Morris v. Morris, 152 So.2d 291 (La.App., 1st Cir.1963).
In this connection, it may be pointed out that plaintiff lives in an apartment, and proof of her fitness for custody of the minors was confined to the testimony of herself, of a witness whom she had recently met in the apartment, and of another who resides in Texas and who seldom sees her.
The primary question in determining custody pertains to the welfare and interest of the children. The resolution of this question is left largely to the discretion of the trial court who has wide latitude in its determination.
Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960);
Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952);
Ard v. Ard, 210 La. 869, 28 So.2d 461 (1946);
Reeves v. Reeves, 150 So.2d 58 (La.App., 2d Cir.1963);
Stevens v. Stevens, 147 So.2d 754 (La.App., 1st Cir.1962);
Byrd v. Byrd, 128 So.2d 794 (La.App., 3d Cir.1961).
An appellate court is reluctant to reverse a judgment in these instances unless there has been a clear abuse of discretion.
*227 Messner v. Messner, supra, and the authorities cited therein.
In approving an award of a minor child to a father, the court, in Guillory v. Guillory, supra, stated:
“The father has always thought of and looked after the welfare of the child, but the appellant [the mother] has not.”
59 So.2d 424, 425.
See, also, Decker v. Landry, 227 La. 603, 80 So.2d 91, 92 (1955), wherein the custody of two minor children was maintained in their father. There it was said:
“Viewed as a whole, the most that can be said of appellant’s evidence is that it shows that appellee has not always been an ideal father. On the other hand, it is fully established that he has amply provided for his children since he obtained their custody in 1951, and has consistently recognized his paternal responsibility.
“In addition, it is clear that he has shown infinitely more interest in the children than appellant. She not only abandoned them but, apart from her first attempt to obtain their custody almost three months after the judgment of separation, has never evinced any great desire for them.” (Emphasis supplied.)
The trial judge was obviously of the opinion that it was to the best interest and advantage of the children that their custody be awarded to the father. The children, as heretofore pointed out, are boys approximately 10 and 13 years of age. The mother abandoned them to their father and, in her divorce decree, their custody was awarded to him. These children have attained the age where they need the care, attention, and training of their father, who shares with them their recreational activities, such as swimming, hunting, and fishing, and provides amply for their education and religious training.
We find no manifest error or abuse of discretion vested in the trial court in the award of custody of these children to their father on a basis that it is to the greater interest and advantage of the minors that they be left with him.
In resolving this matter of custody, we find it unnecessary to resolve the questions arising from a conflict of laws; that is, the jurisdiction of the Nevada court over the minors, who were never in that state, and the validity of its decree concerning their custody. We have considered, as did the trial court, the best interests and advantages of the minors as if presented in an initial hearing, a proceeding less burdensome to plaintiff who would otherwise have been required to establish a change in circumstances since rendition of the original decree necessitating a change in custody. She would therefore have had to bear the burden of establishing not only that the conditions under which the children are living with their father are detrimental to their best interests but also that she is fit and able to provide a good home and a better environment if given their custody.
Decker v. Landry, supra;
Wells v. Wells, 180 So.2d 580 (La.App., 3d Cir.1965).
For the reasons assigned, the judgment appealed is affirmed at plaintiff-appellant’s costs.
Affirmed.