HEARD, Judge.
By this action appellant, Frank Fulco, Jr., seeks the custody of his three minor children, Sharon Kay Fulco, Sandra Renee Fulco, twins, age 9, and Frank Fulco, III, age 8, issue of his marriage with appellee, Elizabeth Lucille Bradford Fulco, and discontinuance of child support paid to Mrs. Fulco. The children are in legal custody of appellee pursuant to a judicial decree rendered on June 18, 1969. The Fulcos were married October 2, 1959 and on June 18, 1969 a judgment of separation from bed *462 and board was rendered in favor of Mrs. Fulco, granting- her custody of their three children and $250 per month as child support. On October 8, 1969 Mr. Fulco filed a rule for a decrease in child support. Responding on October 17, 1969 Mrs. Fulco filed a petition to increase the child support in which petition she made the paternal grandfather of the children, Frank Ful-co, Sr., a party defendant under the provisions of Article 229 of the Louisiana Civil Code. Pursuant to an agreement, the judgment against Frank Fulco, Jr. for child support was reduced to the sum of $150 per month with the provision that he pay certain medical expenses and Mrs. Fulco was granted usufruct of the home at 3221 Surrey Road, Shreveport, Louisiana owned by Frank Fulco, Sr. On August 6, 1970 Frank Fulco, Jr. filed this rule to terminate usu-fruct of the residence and modify the custody award to award him custody of his minor children. From a judgment terminating usufruct of the home -for the reason that Mrs. Fulco and the children no longer resided there and rejecting his demands for a modification of custody judgment, Frank Fulco, Jr. has appealed.
Appellant’s principal contention is that Mrs. Fulco is morally unfit to have custody of the children and the children are now living in a detrimental environment.
It was established that Frank Fulco, Sr. provided a home for Frank Fulco, Jr. and his wife and three children at 3221 Surrey Road, rent free, in January of 1966. The family lived there at intervals until May 1969 when they separated and Frank Ful-co, Jr. moved from the residence.
In June 1969 Mrs. Fulco met a local dentist, a married man with two children, and they began going out together. She stated they would go out once or twice each week. On these occasions they frequented bars or restaurants in the vicinity of Shreveport and occasionally went skiing on Lake Bis-tineau. Mrs. Fulco was employed by Crystal Oil Company from 8 A.M. until 5 o’clock P.M. When she went out with the dentist the children were left with her mother, Mr. Fulco’s parents or a baby sitter. The doctor frequented the home of Mrs. Fulco, staying late at night when the lights would go out in the bedroom and the children were sleeping in adjoining rooms. On one occasion he came out of the Fulco home about 10 o’clock P.M. and moved his car from in front of the house to an adjoining school ground. The next morning he was seen leaving the home barefoot with his shoes in his hand. Mrs. Fulco explained this incident by stating that he fell asleep before the television and slept on the couch all night. Due to the fact that he had had an accident, his feet swelled and it was necessary to remove his shoes in order to walk. The Fulco home was frequented so often by the doctor that the neighbors grew to know him quite well and to recognize his car. Due to difficulties in his own home he moved into various apartments. Mrs. Fulco and her children often visited him and occasionally with his children in these apartments. In November 1969 the doctor and Mrs. Fulco, with others, attended the LSU-Ole Miss football game in Jackson, Mississippi, spending two days and a night. In May of 1970 she and the doctor, with others, attended the Craw-fish Festival in Breaux Bridge and spent two days. On these out of town trips Mrs. Fulco was unable to remember where she spent the night or with whom, and denied ever having any illicit relations with the doctor. Mrs. Bradford, Mrs. Fulco’s mother, testified that she knew the doctor and knew that he was married, but understood he was separated from his family. Mrs. Fulco’s friend had visited in Mrs. Bradford’s home on several occasions with her and her children and with the Fulco children. She further stated the doctor was very fond of the Fulco children.
Testimony showed Mrs. Fulco seldom if ever accompanied the children to church on Sunday or provided any spiritual influence and guidance.
As to Mr. Fulco’s fitness for caring for the children, it was established that he *463 owned his own business and could remain with the children until they went to school in the morning. He could also be with them at night. Frank Fulco, Sr. testified he would have the home at 3221 Surrey Road repaired and the father and children could remain at his home while repairs were completed. Even though Mrs. Fulco retained a private investigator to keep her husband under surveillance, the investigator could report nothing to indicate that Fulco was morally unfit to care for his children.
It is argued by counsel for plaintiff that the alleged adultery of Mrs. Fulco has not been proved with the certainty required by the jurisprudence, and even if it has, the evidence does not justify forfeiting custody of the minor children, nor would it be in their best interest. Further, it is contended that in any event there has been no abuse of the wide discretion granted the trial court in the present case in his maintaining the custody in Mrs. Fulco. While it is true that no one actually saw Mrs. Fulco commit adultery, the circumstances are strong that she did, particularly on occasions when the doctor spent the night in her home with no one there but the children, and in overnight trips with him to other cities. She denied having illicit relations with the doctor, but the trial court did not believe what she had to say.
The source of the court’s authority in awarding custody in divorce or separation proceedings is Louisiana Civil Code art. 157 which reads:
“In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. The party under whose care a child or children is placed, or to whose care a child or children has been entrusted, shall of right become natural tutor or tutrix of said child or children to the same extent and with the same effect as if the other party had died. (As amended Acts 1921, Ex.Sess., No. 38; Acts 1924, No. 74.)”
Several rules of interpretation and application of this article have been developed by the jurisprudence. In Nugent v. Nugent, La.App., 232 So.2d 521, the court stated:
“The paramount question to be considered and answered in determining to whom the custody of the child should be granted is: What would serve the greatest advantage, the best interests and the best welfare of the child? Jackson v. Jackson, 217 So.2d 223 (La.App. 2 Cir. 1969); Moose v. Abdalla, 248 La. 344, 178 So.2d 273 (1965); Bush v. Bush, 144 So.2d 119 (La.App. 4 Cir. 1962); and LeBlanc v. LeBlanc, 194 So.2d 122 (La. App. 3 Cir. 1967.)”
* * * * * *
“The settled general rule is that the mother’s right to the custody of her children, especially when they are of tender age, is preferred to that of the father, and her right to custody should not be denied unless she is found to be morally unfit or otherwise unsuitable. There is a presumption that the best interests and welfare of the children will be served by placing them in the custody of the mother, and it is only in exceptional cases that it will be considered to be to the best interest of the children that their custody be entrusted to the father. Tullier v. Tullier, 140 So.2d 916 (La.App. 4 Cir. 1962) and cases cited therein. See also Gentry v. Gentry, 136 So.2d 418 (La.App. 1 Cir. 1961).
******
“The trial judge has much discretion in awarding the custody of a child whose parents have been legally separated or divorced, and his conclusions are entitled to great weight. The determinations made by the trial judge as to custody, therefore, will not be set aside unless it clearly appears that there has been an *464 abuse of discretion or unless the judgment awarding custody has been based upon incorrect legal principals. Bush v. Bush, supra; Messner v. Messner, 240 La. 252, 122 So,2d 90 (1960); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952) ; and LeBlanc v. LeBlanc, supra.” [232 So.2d 521, 523]
In Tuggle v. Tuggle, La.App., 235 So. 2d 166 (2d Cir. 1970) Judge Dixon as organ of the court said:
Mrs. Tuggle testified that Sergeant Mobley moved into her home for approximately a three month period of time for the purpose of repairing certain household objects, babysitting with the children while she worked, and protecting her and the children from prowlers. She admitted that Sergeant Mobley slept in the same bed with her and the two youngest children. She also admitted that she and Sergeant Mobley and the children made a trip to Florida and another to Arkansas.
^ 2fi * Jj« *
“In our jurisprudence there has grown a general rule which has allowed the mother preference in custody cases unless she is morally or otherwise unfit, or unless she is incapable of giving the children proper care and guidance. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960).
“Appellant strongly relies upon a line of decisions which have stated that adultery alone is not sufficient to deprive a mother of her children when in every other respect she can provide a good home and care for them. Lovell v. Lovell, La. App., 205 So.2d 470 (1967); Brown v. Brown, La.App., 180 So.2d 106 (1965); McCaa v. McCaa, La.App., 163 So.2d 434 (1964); Bush v. Bush, La.App., 144 So.2d 119 (1962).
“The instant case differs from the above cited cases in that Mrs. Tuggle was not guilty of a single indiscretion, but rather of a calculated continued course of illicit relationship. She openly and publicly embarked upon a course of repeated indiscretions in total disregard of moral principles. Such utter disregard for the rules of propriety can but have an ill effect on the children involved. Morris v. Morris, La.App., 152 So.2d 291 (1963).” [235 So.2d 166, 167]
The trial-judge found from the evidence that Mrs. Fulco was unworthy of belief and morally unfit to have custody of the children but due to the fact that she had moved into the home with her mother her life would be different and the environment would be better for the children. The evidence does not bear this out. Mrs. Ful-co testified that she was continuing to see the doctor. Instead of relieving the condition by moving in with her mother, Mrs. Fulco has made it possible to continue her misconduct.
We are of the opinion that the facts of this case demonstrate that Mrs. Fulco’s acts are a calculated course of misconduct detrimental to the interests and welfare of her children.
On the other hand their father would have a good home and his influence would be good. When necessary his parents are willing and able to contribute to their welfare.
Accordingly, there is judgment in favor of Frank Fulco, Jr., and against Mrs. Elizabeth Lucille Bradford Fulco terminating the usufruct of the home at 3221 Surrey Road, terminating child support paid Mrs. Fulco, and granting unto Frank Ful-co, Jr. custody of the three children, Sharon Kay Fulco, Sandra Renee Fulco and Frank Fulco III.
All costs are to be paid by appellee.