HOOD, Judge.
Mrs. Joyce Inell Cole, the divorced wife of B. G. Cole, Jr., instituted this suit to revoke an earlier order of the trial court granting the temporary custody of her two minor children to defendants, and to obtain judgment awarding her the custody of those children. The defendants are Mr. and Mrs. B. G. Cole, Sr., the parents of plaintiffs former husband. Judgment was rendered by the trial court in favor of defendants, rejecting plaintiff’s demands and awarding the permanent custody of the children to defendants. Plaintiff has appealed.
The sole issue presented is whether the best interests of the children would be served by placing them in the custody of plaintiff or by allowing them to remain in the custody of defendants.
Plaintiff was married to B. G. Cole, Jr., in June, 1963. Two children were born of that union, Elizabeth Darlene and Sonya Renae Cole. The family moved to Harrisburg, Pennsylvania, in 1967, where they lived for about one year. On August 4, 1968, Mrs. Cole left Pennsylvania with her two children and moved to the home of her parents, Mr. and Mrs. M. J. Aucoin, in Jena, Louisiana. She remained with her children in Jena and in Iowa, Louisiana, for about one week, but on or about August 11 she left the children with her parents in Jena and she moved to Lake Charles, Louisiana, where she obtained employment as a cocktail waitress or bartender.
On August 17, 1968, the defendants, Mr. and Mrs. B. G. Cole, Sr., of Tioga, Louisiana, visited the children in the Aucoin home. After returning to Tioga that evening, Mr. and Mrs. Cole received a telephone call from Mrs. Aucoin advising that they could come back to Jena and get the children. Mr. Cole thereupon drove back *837 to Jena on the night of August 17, 1968, picked up both of the children and took them to his home in Tioga. The children have lived with defendants, Mr. and Mrs. B. G. Cole, Sr., since that time.
The witnesses disagree as to what transpired shortly before the children were picked up by defendants. Mrs. Aucoin testified that she informed Mr. and Mrs. Cole by telephone on the night of August 17, that plaintiff had instructed her to allow the Coles to “come get the children and see them for a few days.” Mr. and Mrs. Cole, Sr., quoted Mrs. Aucoin as stating that plaintiff had told her that “she wasn’t coming back (to Jena) and that she didn’t want to see the children, her mother or us,” and that she wanted Mrs. Aucoin to ask defendants “to come and pick the children up in Jena.” Regardless of what was said in the course of that conversation, the evidence shows that following that telephone call Mr. Cole returned to Jena in his truck that night and, with the consent of the Aucoins, he returned with the children to his home in Tioga.
The next day, August 18, Mrs. Aucoin contacted the Coles by telephone requesting that they return the children to Jena. Mr. and Mrs. Cole then consulted an attorney, and on August 20, 1968, an order was issued by a judge of the Juvenile Court, Rapides Parish, awarding the temporary care of the two children to Mr. and Mrs. B. G. Cole, Sr. It is that order which plaintiff seeks to revoke by this proceeding.
The older of the two children was five years of age, and the other was two, when Mr. and Mrs. Cole, Sr., first obtained custody of them. This suit was instituted on July 30, 1971, almost three years after defendants obtained custody, and the case was tried about three months later, on November 3, 1971.
Plaintiff did not visit her children for about one year after Mr. and Mrs. Cole obtained custody. Thereafter she visited them about five times while they were living in the B. G. Cole, Sr., home. She stated that she spent about two hours with the children on each of these occasions. The record shows that she was not prevented or prohibited in any way from visiting them more frequently. She did not request that the custody of the children be returned to her at any time until this suit was filed.
While the children were in the custody of Mr. and Mrs. Cole, Sr., plaintiff did not send them any Christmas presents, birthday greetings, letters or gifts of any kind. The only contribution she made toward their support was a $20.00 payment made on one occasion.
The evidence shows that plaintiff’s husband, B. G. Cole, Jr., instituted suit for divorce against plaintiff in September, 1968, shortly after she first returned to Louisiana, and he testified that he obtained a divorce against her in Pennsylvania in August, 1971.
Despite the pendency of these divorce proceedings, plaintiff went back to Pennsylvania to join her husband twice, but the children did not accompany her on either of those trips. On her first visit, which occurred in October or November, 1969, she stayed with her husband about four weeks. Her second visit was made in May, 1971, shortly before this suit was filed, and she stayed with her husband from four to six weeks at that time.
There is no evidence tending to show that plaintiff is morally unfit to care for her children. She has worked as a cocktail waitress or bartender in several lounges in the Lake Charles area during most of the time the children were in the custody of their paternal grandparents. Her present working hours are from “twelve to seven,” but she stated that on some occasions she has worked until midnight, and at one time she worked until four or five o’clock in the morning. Her earnings are about $400.00 per month.
Plaintiff apparently concedes that the apartment in which she resides is not ade *838 quate for the children. She states, however, that if she is awarded custody of her children she will move to a more suitable apartment and will look for a different type of job. She testified that she has applied for an apartment in a government housing project in Lake Charles, but that she had not as yet been accepted. She also stated that she has filed an application for work with an employment agency in Alexandria, and that it is possible that she will move to Alexandria if she obtains custody of the children. Up to the time of the trial, however, she had not been offered a suitable job in that area.
The evidence shows, without contradiction, that the children have been well cared for in the home of defendants. Mr. and Mrs. Cole, Sr., have provided them with everything they have needed, including medical care, education, religious training, clothes, supervision, love and affection. They are able, physically and financially, to provide for the children, and in this suit they pray for judgment awarding them the permanent custody. The evidence shows that they are morally fit to care for them.
The trial judge concluded that the best interests of the children would be served by placing them in the custody of Mr. and Mrs. B. G. Cole, Sr.
The established rule is that in determining the custody of a child, the right of the legal parent, and particularly the right of the mother, to the custody is preferred to that of another. The preferred right of the mother, however, must yield to the superior right of the State to deprive her of the care and custody of her child in the event the physical, mental and moral welfare of the child requires it. State ex rel. Stokes v. Stokes, 222 So.2d 573 (La. App. 1 Cir. 1969).
The paramount question to be considered in determining to whom the custody of a child should be granted is: What would serve the greatest advantage, the best interest and the best welfare of the child? Nugent v. Nugent, 232 So.2d 521 (La.App. 3 Cir. 1970); Jackson v. Jackson, 217 So.2d 223 (La.App. 2 Cir. 1969); LeBlanc v. LeBlanc, 194 So.2d 122 (La.App. 3 Cir. 1967); Hebert v. Hebert, 255 So.2d 630 (La.App. 3 Cir. 1971); LSA-C.C. Art. 157.
The trial judge has much discretion in determining to whom the custody of a child should be awarded, and his conclusions are entitled to great weight. The determinations made by the trial judge as to custody, therefore, will not be set aside unless it clearly appears that there has been an abuse of discretion or unless the judgment awarding custody has been based on incorrect legal principles. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Hebert v. Hebert, supra.
Under these established rules, it is clear that plaintiff in the instant suit is entitled to obtain custody of her children in preference to anyone else, and that she should not be deprived of that custody unless the best interest, welfare and happiness of the children require that they be placed in the custody of someone else. We agree with the trial judge, however, that under the circumstances which exist at this time the best interest, welfare and happiness of these children require that they remain in the custody of the defendants. Although the record indicates that plaintiff is morally fit to have the custody of her children, it fails to establish that she has suitable living quarters for them, or that she has the time or the financial ability to care for them. The evidence also fails to show that plaintiff has a great deal of affection for her children, or that she genuinely desires to have them in her custody.
Plaintiff’s present living quarters are not suitable for raising the children, and her working hours would not permit her to be with her children during afternoon and evening hours. It is true that plaintiff plans to obtain a better place in which to live and a different type of job if she is awarded custody, but she has been unsuc *839 cessful in obtaining either up to this time, and she has not shown with any degree of certainty that she will he able to improve her living conditions or her ability to care for the children if she obtains custody.
Plaintiff apparently has no income other than her earnings, and her expenses (including her car payments) are such that it is not likely that she could employ a person to assist her in caring for her two young daughters while she is at work, even if she should be successful in obtaining a suitable place in which to live. The children have lived with their grandparents, Mr. and Mrs. B. G. Cole, Sr., for more than three years, and to them that is their home. We, of course, do not know how a permanent change of custody would affect the children. We feel certain, however, that they would be adversely affected if a change in custody were made now and another change of custody should become necessary shortly thereafter.
We are concerned, as was the trial judge, about plaintiff’s apparent apathy toward her children during the period of over three years while they were in the custody of defendants. We are not willing to hold on the evidence presented here that she has abandoned her children, or that she has forfeited the preferential right to custody which the law accords the mother, but we do feel that her failure to contact or to visit with her children more than a very few times during that long period of time is inconsistent with her alleged desire to have the children live with her.
Under the facts presented here, and considering plaintiff’s preferential right to custody, we feel that we cannot reverse the judgment of the trial court, because we are convinced that it would not be for the best interest and welfare of the children for a change of custody to be made at this time.
A judgment awarding custody of children is not final or conclusive in the sense that it cannot be changed. The judgment which is being rendered here may be set aside, modified or changed if and when it is shown that plaintiff is able to properly care for her children and that the welfare and best interests of the children can be better served by making such a change. Willis v. Willis, 209 La. 205, 24 So.2d 378 (1945); Messner v. Messner, supra; Hickman v. Hickman, 218 So.2d 48 (La.App. 3 Cir. 1969).
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.