295 So.2d 92 (1974)
Priscilla HUDSON, Plaintiff-Appellant,
v.
Monty HUDSON, Defendant-Appellee.
No. 12215.
Court of Appeal of Louisiana, Second Circuit.
February 12, 1974.
Rehearing Denied March 19, 1974.
Writ Refused May 17, 1974.
*93 McCollister, Belcher, McCleary & Fazio by Fred H. Belcher, Jr., and Kenneth Addison Duncan, Baton Rouge, for plaintiff-appellant.
Parkerson & Guerriero by Joe D. Guerriero, Monroe, for defendant-appellee.
Before AYRES, HALL and WILLIAMS, JJ.
En Banc. Rehearing Denied March 19, 1974.
AYRES, Judge.
On this appeal only concerned is the question of the custody of two minor children, both boys, aged, respectively, 12 and 8 years.
The mother, with legal and actual custody of the children, in an action against her former husband, sought support for the children and an accounting of property allegedly comprising assets of the community of acquets and gains formerly existing between them. The father reconvened for custody of the minors.
Upon a finding that the mother had engaged in a course of immoral conduct with a man named Watson, the court awarded custody of the children to their father. From the judgment thus rendered and signed, the mother appealed.
*94 In this court, appellee moved to dismiss the appeal, contending that the orders of appeal were neither timely granted nor perfected. This motion is without merit. The judgment appealed was rendered and signed on April 5, 1973. A motion for a new trial was overruled on May 17, 1973. Orders of appeal entered on June 15, 1973, were perfected on the same date by the filing of an appropriate appeal bond. The appeal was thereby taken and perfected within the delays prescribed by law, that is, within 30 days from the date of the denial of a motion for a new trial. LSA-C.C.P. Arts. 2087(1), 3942, and 3943.
The record discloses a state of facts pertinent to the merits of this cause which require a brief review.
At the beginning of a series of circumstances which culminated in a divorce between them, the Hudsons lived in Winnsboro, Louisiana, where he was employed by Red Barn Chemicals, Inc. Another employee of Red Barn was Jim Watson. The Hudsons separated and Mrs. Hudson moved, with the children, to Bastrop, Louisiana, where she and the children resided with her mother's and father's family. Later, Mrs. Hudson obtained employment as secretary to the administrator of a hospital in Crossett, Arkansas. She again moved and established a residence there for herself and her children. During her seven-month sojourn in Arkansas, Mrs. Hudson obtained a divorce from her husband. She later secured similar employment in Kosciusko, Mississippi, where she removed with her children and set up residence in a mobile home.
It is pertinent to note that Watson followed Mrs. Hudson to Arkansas, where he maintained a separate abode. It appears that later he secured employment in Mississippi and subsequently Mrs. Hudson, as already noted, moved to that State. The record establishes that Watson was a frequent visitor in Mrs. Hudson's homes both in Arkansas and in Mississippi. He frequently had breakfast with her and her children as well as evening meals. Inasmuch as Mrs. Hudson's employment required that she be on duty at 7:00 a. m., Watson, on convenient days, remained after breakfast until about 8:00 a. m., when he saw the children to school.
While there is testimony to the effect that on at least one occasion Watson spent the entire night in Mrs. Hudson's home, this testimony is denied by Mrs. Hudson, who contends that Watson always left her home before bedtime for her and the boys. She further testified that it was her intention to marry Watson as soon as he obtained a divorce from his wife. It is alleged in a motion for a new trial that she and Watson were married on March 29, 1973.
The facts in the instant case closely parallel those in the case of Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), as detailed by the Supreme Court. In that case, Mrs. Fulco, after her husband sought a change of the custody of their children from her to him, moved in with her parents. There was no evidence of immoral conduct following such move. In that case, the Supreme Court took the occasion to point out:
"A judicially separated wife is not required to live in monastic seclusion, without any male acquaintances (although of course if she engages in a calculated and continued public course of misconduct, such will be regarded as detrimental to the interest and welfare of her children).
"In this regard, we believe the following legal principles are applicable:
"The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958) and jurisprudence therein cited; see also Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.
"The general rule is that it is in the best interest of the children of the marriage *95 to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958); Boatner v. Boatner, 235 La. 1, 102 So.2d 472 (1958); Tullier v. Tullier, 140 So.2d 916 (La.App.1962) (citing numerous decisions of this court to such effect.)" (Emphasis supplied.) 254 So.2d 605.
It is well recognized that the primary consideration in awarding custody of children is the welfare, happiness, and best interests of the child. Donnelly v. Datusch, 213 La. 635, 35 So.2d 413 (1948); Ard v. Ard, 210 La. 869, 28 So.2d 461 (1946); State ex rel. Theriot v. Pulling, 209 La. 871, 25 So.2d 620 (1946). The same consideration as noted immediately above is determinative in the matter of modifying a custody decree. Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3 (1953); State ex rel. Bush v. Trahan, 125 La. 312, 51 So. 216 (1910).
The courts of this State have uniformly held that the mother's right to custody is paramount to that of the father, unless she is morally unfit or it is to the greater advantage of the children for them to be entrusted to the care of the father. Kieffer v. Heriard, 221 La. 151, 58 So.2d 836 (1952); Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456 (1949); Ard v. Ard, supra. In a great majority of cases, it has been held that the welfare of the children is best served by placing them in the mother's care. Drouin v. Hildenbrand, supra; Morris v. Morris, 152 So.2d 291 (La.App., 1st Cir., 1963). The paramount right of the mother is especially recognized where the custody of children of tender years is involved. McManus v. McManus, 250 So.2d 498 (La.App., 1st Cir., 1971). It is also well established that, because of the strong preference for the mother in custody matters, to deprive a mother of her child, her moral unfitness must be clearly proved. Meyer v. Hackler, 219 La. 750, 54 So.2d 7 (1951).
It must, however, be noted that the testimony in the instant case does not establish adultery or immorality on the part of the mother. The testimony of such conduct on her part was, as already noted, denied by her. The testimony offered to support the charge was not direct but circumstantial and sufficient only to raise suspicions. There is also testimony in the record that leaves doubt as to whether the witnesses were in position or within a distance to make positive observations. The evidence, in our opinion, supports not immoral conduct but, at most, only indiscretions unsanctioned by present-day standards of conduct. The proof here is, in our opinion, insufficient to deny the mother the custody of her children.
Under some circumstances adulterous conduct on the part of a parent may be grounds for concluding that the guilty party is morally unfit to have the custody of minor children. However, where the mother is guilty of such conduct, even on more than one occasion, the conclusion does not necessarily follow that she is morally unfit to have custody of the children. McCaa v. McCaa, 163 So.2d 434 (La.App., 2d Cir., 1964writs refused, 246 La. 579, 165 So.2d 480 [1964]); Brown v. Brown, 180 So.2d 106 (La.App., 2d Cir., 1965); West v. West, 170 So.2d 160 (La.App., 2d Cir., 1964); Antony v. Antony, 160 So.2d 765 (La.App., 3d Cir., 1964).
Moreover, the jurisprudence is replete with instances in which the mother was declared a fit person to have custody of her children despite a finding of her engagement in an illicit relationship. Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311 (1953); Messner v. Messner, supra; Jones v. Timber, 247 So.2d 207 (La.App., 1st *96 Cir., 1971); Overstreet v. Overstreet, 244 So.2d 313 (La.App., 4th Cir., 1971); Wilson v. Wilson, 218 So.2d 372 (La.App., 2d Cir., 1969); Brown v. Brown, supra; Fletcher v. Fletcher, 170 So.2d 144 (La. App., 2d Cir., 1964); Bush v. Bush, 144 So.2d 119 (La.App., 4th Cir., 1962); Wade v. Wade, 129 So.2d 571 (La.App., 4th Cir., 1961).
It was, indeed, held in Messner v. Messner, supra, that, in an action by a divorced husband to obtain custody of the minor children from his wife who had married again, the wife was found not morally unfit, though prior to her marriage to her then husband he had occasionally stayed overnight in the wife's residence, had his meals prepared and his clothes washed by the wife, and stayed with the children while the wife worked.
In Wade v. Wade and Wilson v. Wilson, supra, it was held that on account of the divorced wifes' redemption from immorality by marriages to the co-respondents it was proper to award the custody of the minors to the mothers who were maintaining the family homes.
It may be further noted that Mrs. Hudson was initially, and in the judgment of divorce, awarded the care, control, and custody of her minor children. A jurisprudential rule appears to be established in this State to the effect that a party requesting the modification of a child-custody decree must prove not only that the conditions under which the child was then living were detrimental to the child's interest but that the applicant could and would provide a better environment should he be given custody. Bergeron v. Bergeron, 257 So.2d 816 (La.App., 1st Cir., 1972); Fletcher v. Fletcher, supra; Holmes v. Holmes, 203 So.2d 897 (La.App., 4th Cir., 1967).
The appellee has signally failed to sustain the burden of proof on either of the aforesaid issues.
The appellee lives with his mother and father; he has no home of his own insofar as the record discloses, and earns a gross of only $75 per week, according to his testimony. If he were granted custody of his children, he would have to leave their rearing largely to his father and mother. Under these circumstances, the welfare of the children requires that they be entrusted to their mother. Scacciaferro v. Hymel, 206 La. 973, 20 So.2d 284 (1944); Laplace v. Briere, 152 La. 235, 92 So. 881 (1922).
The conclusion is inescapable that the judgment disturbing and upsetting the custody of the children intially awarded the mother is erroneous and should be set aside.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that the mother, Mrs. Priscilla Hudson Watson, be, and she is hereby, awarded the permanent care, control, and custody of the minor children, Monty Hudson, Jr., and Chad B. Hudson, issue of her marriage with the defendant, Monty Hudson.
It is further ordered, adjudged, and decreed that the defendant be, and he is hereby, assessed with the costs of this proceeding, including the cost of this appeal.
Reversed and rendered.