LOTTINGER, Judge.
This is an appeal from a judgment awarding to the defendant wife and moth *679 er, Winnie Belle Sibley Fontenot, the permanent care, custody and control of the minor children born of the marriage between the defendant and the plaintiff, Leon Austin Fontenot. From this judgment, the plaintiff husband and father has perfected this appeal.
The plaintiff-appellant, Leon Austin Fontenot, filed this suit for divorce, based on adultery, and also seeking both the temporary and permanent care, custody and control of his three minor children, Charlene Adelle Fontenot, Barbara Ann Fon-tenot, and Bryan Austin Fontenot. Suit was filed on April 21, 1975. At the time this suit was filed, the plaintiff and defendant were legally separated as per a judgment of the Trial Court in a suit instituted by Mrs. Winnie Belle Sibley Fonten-ot, and in which suit, Mrs. Fontenot was awarded the permanent care, custody and control of the minor children. In the instant proceeding, there was no serious argument made against the adulterous activities of Mrs. Fontenot, and no argument is raised on appeal as to that portion of the judgment.
It is argued by plaintiff-appellant that the Trial Judge erred (1) in awarding custody to the defendant in the face of convincing proof that she was morally unfit, (a) in holding that a short interval between the hearing on the rule and the trial on the merits sufficed to show a conscientious effort at moral reformation on the part of the wife and mother, (b) by the Trial Judge’s blind adherence to the maternal preference rule; (2) by rejecting the more stable environment presented by the husband and father; and (3) in alluding to the doctrine of mutual fault and yet granting final judgment on the merits.
The plaintiff-appellant had his wife under observation by a private detective, and it was reported that the defendant and one Ora Mitchell, a widower whose wife had died in November of 1974, were together some 68 times between February 11, 1975, and May 8, 1975, the date of the hearing on the rule. Of these 68 observations, it was .testified that the defendant and Mitchell were only alone some 13 times, and of these 13 times they were supposedly alone, only four of these occurred in the home of the defendant where her children also lived and were present.
Particular note should be made of the four times that the defendant and Mitchell were at her home. One time was from approximately 11:40 p. m. to midnight, and the three other times ranged from 9:30 p. m. to 10:40 p. m. On these occasions the witness who had observed them testified that a light was on in the kitchen, but that this was the only light that could be seen. The other times the defendant and Mitchell were alone were at Mitchell’s house. There is no question but that the defendant and Mitchell saw each other quite often during this period of time, and that this was known by the defendant’s children. As to whether any immoral conduct took place while the defendant’s children were in the same house is not known for certain.
In the separation judgment, the Trial Judge had granted the defendant the permanent care, custody and control of the minor children, but at the hearing on the rule,- in the instant proceeding, he changed that judgment to temporary care, custody and control. In his oral reasons for judgment at the hearing on the rule the Trial Judge said:
“It would not be fitting or proper for these children to growup thinking that this Court, or any other court, can condone and overlook completely the type of conduct in which Mrs. Fontenot is presently indulging herself. It has not, although the actual intimatices [sic] between them have occurred out of the home, out of the presence of the children, their companionship with each other has become of such a nature and of such a degree and intensity and frequency that for all practical intents and purposes they might as well be man and *680 wife. She has a key to his house and he has a key to her house. It has not as yet, perhaps, reached the point of where it is an open and notorious course of public indiscretion, nor has it quite yet, however, reached defiance and complete disregard of generally accepted moral principles. She has tried to exercise at least a degree of discretion about it.
“So, the Court has to weigh Mr. Fonte-not’s prior track record, his sudden conversion, if there has been one, against Mrs. Fontenot’s current indiscretions, and try to determine what is in the best interest of the children, and yet make the children, and, also, the parties realize that the Court is not going to condone the type of life Mrs. Fontenot is currently living. I do think that, and I won’t prolong the agony, I do think that at the present time the Court is going to make purely and simply a temporary award of custody to Mrs. Fontenot. I am going to continue it temporarily and provisionally in her, but if she doesn’t clean things up in her relationship with Mr. Mitchell she is going to be placed in serious jeopardy of loosing those children; and if at the time of the trial of this case on the merits that situation has continued to exist; if the situation at the time of the trial is exactly the same as it is today the Court will switch custody. I will give you advance notice of that right now.”
At the trial on the merits, some six weeks later, it was shown that the defendant and Mitchell had some six dates, but always other people were with them, and never in the home of the defendant. In granting the defendant the permanent care, custody and control of the minor children, the Trial Judge said:
“I believe in the last several weeks she has made a conscientious sincere effort to change the moral climate in which she is living, and in which she is raising these children. I think she has limited her contacts with Mr. Mitchell very drastically. I don’t think she has engaged in any further sexual activity with him since that time. I believe that she is sincere when she says that she wants to marry him. Counsel is well aware of the Fulco case, [(Fulco v. Fulco) 259 La. 1122, 254 So.2d 603 (1971)] of course, in which a mother given custody of her children in a situation somewhat similar to this, where at the time the suit was filed the mother was living in an immoral environment, but prior to the trial of the case she had straightened her life out, and the Court then found that under those circumstances she was entitled to have the continued custody of her children. The moral background here might be even worse than it was in the Fulco situation, but, nevertheless, the Court weighing the alternatives that is available to it here as to whether these children should be placed with Mr. Fon-tenot or Mrs. Fontenot at this time believes that it would be in the best interest now, particularly in the light of the fact that Mrs. Fontenot has straightened herself out. In view of the fact that she proposes to marry her alleged paramour believes that it would be in the best interest of these children to continue them in her custody. And, of course, that is a situation which is always subject to change, and if it should be proven at a later date that the Court is wrong in that respect, and if she continues to indulge herself in an immoral type of life and existence, I can assure you that if it comes before this Court I will not hesitate to take those children away from her. So, she is going to have to straighten up and teach those children the proper type of moral values or she is going to have to loose her children. I believe that she is making a sincere effort to do that at this point, but she came awfully close to loosing her children.”
In Fulco v. Fulco, 259 La. 1122, 254 So. 2d 603 (1971), Justice Tate set down the following rules and legal principles that *681 are applicable in Louisiana in regards to child custody cases, to-wit:
“(1) The paramount consideration in determining to whom custody should he granted is always the welfare of the children. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958) and jurisprudence therein cited; see also Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.
“(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they.are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958); Boatner v. Boatner, 235 La. 1, 102 So.2d 472 (1958); Tullier v. Tullier, 140 So.2d 916 (La.App. 1962) (citing numerous decisions of this court to such effect).
“(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So. 2d 424 (1952); Nugent v. Nugent, 232 So.2d 521 (La.App.1970) (citing numerous court of appeal decisions to such effect).
“(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960) ; Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955) ; Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952).”
In answering the specifications of error, we find that the Trial Judge was well within the rules and principles of law as set down in Fulco v. Fulco, supra, and exercised wisely the great discretion granted him. He alone had the opportunity to observe the witnesses as they testified, and is fully capable of determining their validity. He apparently was deeply impressed by the defendant’s testimony at the trial on the merits and her seriousness in attempting to correct the errors of her ways and lead a better life with her children.
As to the specification of error concerning any mention of mutual fault, we are at a loss as to why plaintiff-appellant brings this issue before this Court inasmuch as plaintiff sued for a divorce, the defendant wife did not reconvene, nor does it appear from the record that any defense was attempted against the action for the divorce, and his request for a divorce was granted. Perhaps he has now changed his mind and wants it all undone.
Be that as it may, we must dispose of this issue. The rule in Louisiana is well settled that in an action for separation or divorce, mutual equal fault will bar relief to both parties. Eals v. Swan, 221 La. 329, 59 So.2d 409 (1952). Even though the Trial Judge did allude to some mutual fault, we assume that since he granted the plaintiff’s request for the divorce, he did not reason the mutual fault *682 to be equal, and we see no reason to disturb his findings.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by the community of acquets and gains formerly existing between plaintiff-appellant and defendant-appellee, or in the alternative to be divided equally between appellant and appellee.

Affirmed.