STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-31

IN RE:
S.H.
J.E.H.
APPLYING FOR THE ADOPTION OF K.J.H.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 7691
HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

Frank Granger
1135 Lakeshore Drive, Sixth Floor
Lake Charles, Louisiana 70601
(337) 439-2732
Counsel for Appellant:
        F.M.S. (biological mother)

Alyson V. Antoon
Antoon Law Firm
1111 Ryan Street
Lake Charles, Louisiana 70601
(337) 564-6919
Counsel for Other Appellee:
        K.J.H. (child)

**Alexander L. H. Reed**
**The Sanchez Law Firm**
**1200 Ryan Street**
**Lake Charles, Louisiana  70601**
**(337) 433-4405**
**Counsel for Appellees:**
      **S.H. (wife of biological father)**
      **J.E.H. (biological father)**

**KEATY, Judge.**

F.M.S.,[1] the biological mother of K.J.H., appeals from a September 3, 2019 Judgment wherein the trial court determined that it was in the best interest of K.J.H. to be adopted by S.H., wife of K.J.H.'s biological father, J.E.H. F.M.S. appealed that judgment and filed a Declinatory Exception with this court, alleging that the trial court lacked "proper" subject matter jurisdiction to hear the Intrafamily Adoption proceeding. For the following reasons, we deny the exception and affirm the appealed judgment.

## FACTS AND PROCEDURAL HISTORY

The parties to this matter generally agree upon the factual and procedural history of this case. J.E.H. and F.M.S. were married in Arkansas on March 5, 2015. K.J.H. was born on April 1, 2015. J.E.H. and F.M.S. split up in June 2015 and filed a Petition for Divorce one month later in Columbia County, Arkansas. J.E.H. and F.M.S. were admittedly using drugs at that time, and K.J.H. was being cared for by her maternal grandparents. F.M.S.'s and J.E.H.'s parents intervened into the Arkansas suit to ensure K.J.H.'s well-being. The Arkansas court held a hearing on July 13, 2017. J.E.H. and F.M.S.'s parents were present, but F.M.S. was not, although she had been served with notice. By Order dated December 19, 2017, the Arkansas court named J.E.H. and F.M.S.'s parents as K.J.H.'s joint legal custodians; however, J.E.H. was given the right to determine K.J.H.'s primary residence. The Order allowed F.M.S. visitation under the supervision of and at the times granted to F.M.S.'s parents.

J.E.H. began living in the Lake Charles area in 2016. He and S.H. began dating soon afterward, and they were married in January 2018. In July 2018, J.E.H.

---

[1] The initials of the children and their parents are used to protect the identity of the minor child. Uniform Rules—Courts of Appeal, Rules 5-1, 5-2.

filed a Petition for Ex-Parte Temporary Sole Custody of K.J.H. in the Fourteenth Judicial District Court in Calcasieu Parish, Louisiana (14th JDC) after K.J.H., then two and one-half years old, returned from visitation with F.M.S.'s parents reporting that she had been sexually assaulted by her maternal grandfather. The named defendants in the Ex-Parte Petition were F.M.S. and her parents. The Ex-Parte Petition was granted, J.E.H. was granted temporary sole custody of K.J.H. as prayed for, and a Temporary Restraining Order (TRO) was issued against F.M.S.'s parents enjoining them and their relatives from coming into contact with J.E.H.

J.E.H. and S.H. filed a Petition for Intrafamily Adoption (Adoption Petition) in the 14th JDC on December 13, 2018. Therein, they alleged that S.H. "has fully supported and acted as the child's mother since before the[y] were married," and, thus, it was in K.J.H.'s best interest that she be adopted by S.H.. They further alleged that:

> [F.M.S.] has no legal custody of the child, and has not seen the child since she went to jail in October, 2017. The last time the child saw [F.M.S.] was when [F.M.S.]'s parents allowed [K.J.H.] to facetime [F.M.S.] while she was incarcerated. [F.M.S.] was recently released from jail, and has not tried to contact [J.E.H.] or the minor child at all. [J.E.H.] has contacted [F.M.S.] to ask see [sic] if she would like to communicate with the child, and [F.M.S.] refuses to answer.

Based upon their allegations, J.E.H. and S.H. submitted that the requirement that F.M.S. give her parental consent be dispensed pursuant to La.Ch.Code art. 1245.

F.M.S. filed an opposition the Adoption Petition, asserting that she "has made a full commitment to the responsibilities of parenthood and has communicated and participated in the rearing of the child." She argued that adoption by S.H. would not be in K.J.H.'s best interest because:

1. She is gainfully employed and has secured a residence of her own, where she currently lives with her other minor child, and is able to provide a stable living environment to visit with and care for the minor child.

2

2.    She continuously video chatted with the minor child, until around July 19, 2018, after allegations were made against her parents and a restraining [order] was issued through an Ex-Parte Order of this Court, when she was no longer able to communicate with the minor child.

3    On December 10, 2018, she was informed, she had not requested visitation and contact was denied.

4    She sent text messages, to no avail, requesting to speak with the minor child on Christmas day, December 25, 2018.

Pursuant to F.M.S.'s request, the trial court appointed an attorney to represent K.J.H. in the adoption proceeding.

This matter was tried on May 1 and 2, 2019. By Judgment dated September 3, 2019, the trial court determined "that the consent of [F.M.S.] is not necessary for the adoption of [K.J.H.] and it is in the best interest of [K.J.H.] to be adopted by [S.H.];" comprehensive Written Reasons accompanied the Judgment.

F.M.S. timely sought, and on September 16, 2019, was granted, a suspensive appeal of the September 3, 2019 Judgment. The trial court thereafter signed a Final Decree of Adoption on September 17, 2019, wherein it referenced the petition and exhibits filed, and the testimony of the parties, and, for the reasons stated in its Written Reasons for Judgment, decreed that adoption is in K.J.H.'s best interest and declared her to be the child of S.H. "to the same extent as if the child has been born of [her] marriage," and terminated F.M.S.'s parental rights.[2]

F.M.S. is now before this court alleging that the trial court lacked subject matter jurisdiction over this matter and further asserting that the trial court committed reversible error: 1) by rendering a Final Judgment of Adoption after granting a motion for suspensive appeal of the September 3, 2019 Judgment; and 2) in finding that J.E.H. and S.H. met their burden of proving by clear and convincing

_____

[2]The Final Decree also legally changed the minor's name from K.J.H. to K.R.H., ordered her social security number to be changed, and ordered the Clerk of Court to forward the Decree to the state registrar of vital records for entry of a new certificate of live birth.

3

evidence that she failed to contact or attempt to contact K.J.H. for at least six months.[3]

**DISCUSSION**

### I.   *Subject Matter Jurisdiction*

"A court's power to grant relief is premised upon its subject matter jurisdiction over the case or controversy before it.  In fact, before considering the merits in any appeal, appellate courts have a duty to examine subject matter jurisdiction."  *In re D.C.M.*, 13-85, p. 7 (La.App. 1 Cir. 6/11/13), 170 So.3d 165, 169 (citation omitted), *writ denied,* 13-1669 (La. 7/17/13), 118 So.3d 1102.  "Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted."  La.Code Civ.P. art. 2.  "A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void."  La.Code Civ.P. art. 3.  "Whether a court has subject matter jurisdiction is reviewed on appeal under the de novo standard of review."  *Banerjee v. Banerjee*, 17-245, p. 3 (La.App. 3 Cir. 12/13/17), 258 So.3d 699, 701.

F.M.S. contends that the trial court located in Calcasieu Parish, Louisiana, lacked subject matter jurisdiction over this adoption proceeding because of the "ongoing custody proceedings in Columbia County, Arkansas."  She bases her argument on the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).  *See* La.R.S. 13:1801-1842.

By its own terms, the UCCJEA "does not govern an adoption proceeding[.]" La.R.S. 13:1803.  On the other hand, La.Code Civ. P. art. 10(A) provides as follows:

> A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:

---

[3] *See* La.Ch.Code art. 1245(C)(2).

4

(1) An adoption proceeding in accordance with Title XII of the Children's Code, if the surrendering parent of the child, a prospective adoptive parent, the adoptive parent or parents, or any parent of the child has been domiciled in this state for at least eight months, or if the child is in the custody of the Department of Children and Family Services;

J.E.H. testified that he had been living in the Lake Charles area since 2016. Moreover, J.E.H. was awarded the sole custody of K.J.H. by order dated July 20, 2018, and K.J.H. has been living in Lake Charles with J.E.H. and S.H. ever since. Based upon our de novo review of the record in light of the forgoing statutory provisions, we overrule F.M.S.'s exception of lack of subject matter jurisdiction.

## II.    *Merits*

An intrafamily adoption is the adoption of a child by a stepparent or certain other relatives of the child. *See* La. Ch.C. arts. 1170, 1243. The party petitioning the court for adoption carries the burden of proving a biological parent's consent is not required under the law. The burden of proof for the person seeking to adopt under such circumstances is clear and convincing evidence. However, even upon finding that a parent has lost his right to consent to the adoption, the adoption should only be granted when it is also found to be in the best interest of the child.

*In re K.S.S. Applying for Intrafamily Adoption*, 18-103, p. 2 (La.App. 5 Cir. 8/21/18), 253 So.3d 1311, 1312-13 (citations omitted). "When a court has granted custody to . . . the child's . . . parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child." La.Ch.Code art. 1255. "[T]he trial court's finding of the question of what is for the best interest for the child is to be given great weight and is not to be overturned unless the appellate court finds the trial court has manifestly abused its discretion." *Schilling v. White*, 180 So.2d 225, 228-29 (La.App. 2 Cir.1965).

### A. Was the Final Decree of Adoption Signed in Error?

F.M.S. contends that "[t]he trial court committed reversible error by rendering and signing a judgment of adoption after granting [her] motion for suspensive appeal"

of the September 3, 2019 Judgment." J.E.H. and S.H., on the other hand, contend that the September 3, 2019 Judgment was not a final appealable judgment under the meaning of La.Code Civ.P. art. 1915.[4] Thus, they claim that F.M.S.'s motion for appeal was prematurely filed, but such prematurity was cured when the trial court signed the Adoption Decree.

In *In re L. D. B.*, 17-373 (La.App. 5 Cir. 10/4/17), 228 So.3d 296, the trial court denied biological mother's opposition to the petition for intrafamily adoption filed by her child's biological father and his wife. The trial court did not, however, render a final decree granting or denying petition. Upon appeal by the biological mother, the appellate court held that trial court's denial of mother's opposition to petition was not a final judgment reviewable on appeal. In that case, "[a]lthough the juvenile court's oral and written reasons for judgment indicate that it found adoption to be in the best interest of E.B., such a finding [wa]s not made in the written judgment." *Id.* at 300. After noting the principle that "[n]either the oral nor written reasons for judgment form a part of the judgment[,]" the appellate court determined that the appealed judgment, which merely "denies the [biological mother's] opposition to the petition for intrafamily adoption by finding [that her] consent is not necessary for the adoption to proceed but does not grant or deny the adoption, [wa]s not a final appealable judgment." *Id.* As such, the appellate court held that it did "not have appellate jurisdiction to consider the merits of the . . . appeal[,]" which it dismissed without prejudice. *Id.*

By contrast, the appealed judgment in the matter before us expressly provides "that the consent of [F.M.S.] is not necessary for the adoption of [K.J.H.] and it is in

---

[4] Louisiana Code of Civil Procedure Article 1915 authorizes a trial court to render a partial final judgment even though the judgment does not grant the successful parties all of the relief prayed for or does not adjudicate all of the issues in the case. Paragraph A of La.Code Civ.P. art. 1915 sets forth six circumstances under which a trial court may render a partial final judgment.

the best interest of [K.J.H.] to be adopted by [S.H.]" As noted in the Official Revision Comments to La.Code Civ. P. art. 1915, "[t]he rule that there should be one final judgment is designed to prevent multiplicity of appeals and piecemeal litigation." The September 3, 2019 Judgment granted all the relief sought by J.E.H. and S.H. and denied all the relief sought by F.M.S.. The Final Decree, on the other hand, was for the purpose of implementing and facilitating K.J.H.'s adoption. As such, there should be no appeals in this appeal other than the present appeal. For those reasons, we conclude that the September 3, 2019 Judgment was a final judgment that did not need to be designated as final per the provisions of La.Code Civ. P. art. 1915. Thus, the trial court did not err in signing F.M.S.'s motion for devolutive appeal, and this court's appellate jurisdiction is proper. F.M.S.'s first assigned error lacks merit.

B. **Did J.E.H. and S.H. Meet Their Burden of Proof?**

F.M.S. submits that the S.H. and J.E.H. failed to meet their burden of proving that she failed to contact or attempt to contact K.J.H. for at least six months. S.H. and J.E.H. strongly disagree, maintaining that F.M.S. was either hiding from the law or in prison during most of K.J.H.'s young life. Moreover, they contend that even after being released from incarceration, F.M.S. did not make a meaningful effort to be a part of K.J.H.'s life.

Louisiana Children's Code Article 1193(1) provides that "consent to the adoption of a child or relinquishment of parental rights shall be required of the . . . mother of the child" "[U]nless [her] rights have been terminated." "A parent, whose rights have not been terminated . . . may oppose the adoption of his child by filing a clear and written answer and opposition to the adoption." La.Ch.Code art. 1244.1. Louisiana Children's Code Article 1245 provides, in pertinent part, however, that:

A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of the Article at the hearing on the opposition and petition.

. . . .

C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful cause of the child and any one of the following exists:

. . . .

(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

La.Ch.Code art. 1245. This circuit has held that the communication referenced in La.Ch.Code art. 1245(C)(2) must amount to "significant contact." *Radke v. Fontenot*, 93-1419, p.6 (La.App. 3 Cir. 5/18/94), 637 So.2d 684, 688.

A petitioner [seeking an intrafamily adoption] has the burden of showing at trial that the non-consenting parent refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years. The trial court found that petitioners met their burden of proof. Thus, on appeal, we must determine whether the record evidence furnished a reasonable factual basis for the trial court's factual finding. If we find such a factual basis and cannot say that the finding was clearly wrong, we may not disturb it.

*Id.* (citations omitted).

In finding that S.H. and J.E.H. had met their burden of proof under La.Ch.Code art. 1245(C)(2), such that it was unnecessary to obtain F.M.S.'s consent to S.H.'s adoption of K.J.H., the trial court, in its Written Reasons for Judgment, found that "[t]he testimony provided the following timeline:"

| December 2012 | [J.E.H.] and [F.M.S.] met. |
|---|---|
| March 2013 | [J.E.H.] and [F.M.S.] started dating. |
| March 13, 2014 | [F.M.S.] arrested for meth and cocaine when [J.E.H.] calls police on her. She entered rehab, doesn't complete and relapsed again. |
| March 15, 2015 | [J.E.H.] and [F.M.S.] married. |
| April 1, 2015 | [K.J.H.] born-in hospital for 6 weeks. |

8

| | |
|---|---|
| | When released, [K.J.H.] goes home with [F.M.S.] & [J.E.H.]. |
| June 2015 | [J.E.H.] and [F.M.S.] split-she is living in and out of her parents' house and [K.J.H.] living with her parents. |
| July 2015 | Divorce filed between [J.E.H.] and [F.M.S.]. [J.E.H.] and his parents intervened at some point and Court said [K.J.H.] already living with [F.M.S.] and her parents. |
| October 2015 | Second time [J.E.H.] and his parents intervene, Court said [F.M.S.'s parents] should be temporary caregivers of [K.J.H.] and told [J.E.H.] and [F.M.S.] they need to get their life together. |
| January 2016 | [J.E.H.] gets a job and tries to get back into court-takes a year. |
| April 1, 2016 | [K.J.H.]'s 1st birthday. |
| May 11, 2016 | [F.M.S.] arrested and her probation revoked for noncompliance. |
| June 2016 | [F.M.S.] went into drug court but failed to comply-went about a month and relapsed. She is on the run and warrant out for her until she turned herself in October 2017. |
| October 2016 | [J.E.H.] started dating [S.H.]. |
| May 2017 | [S.H.] quit her job and started staying home with [K.J.H.]. |
| July 13, 2017 | In Arkansas, [J.E.H.] and [F.M.S.'s parents] named joint custodians with [J.E.H.] as primary residence of the child. [F.M.S.] failed to appear and granted supervised visitation. |
| October 30, 2017 | [F.M.S.] went to jail after turning herself in. Last time she saw [K.J.H.] in person because her mother agreed to let her see [K.J.H.] if she turned herself in. |
| December 12, 2017 | [F.M.S.] transferred from jail to intensive rehab. |
| Dec. 2017-March 2018 | [F.M.S.] called [J.E.H.] numerous times but during work hours. [F.M.S.] had home waze[5] contact with [K.J.H.] when she was visiting [F.M.S.'s parents] |
| January 27, 2018 | [J.E.H.] and [S.H.] married. |
| March 4, 2018 | [K.J.H.] made allegations of sexual abuse by her grandfather[.] [J.E.H.] stopped visitation between [K.J.H.] and [F.M.S.'s parents]. |
| May-July 2018 | No calls from [F.M.S.] to [J.E.H.]. |
| July 12, 2018 | [F.M.S.'s mother, K.J.H.'s], grandmother, granted visitation at hearing in Houston.[6] |
| July 13, 2018 | [F.M.S.'s mother] started visitation with [K.J.H.]. |

---

[5] The trial court referred to the video calls that [F.M.S.] made from prison as "home waze." We will refer to those calls by the term "HomeWAV" because that is how they are referenced in the call logs found in Defendants' Exhibits 2, 7, and 11.

[6] While it appears that the trial court erred in describing the location of the July 20, 2018 hearing, the correct location of that hearing has no impact on the resolution of this appeal.

| July 16-19, 2018 | [F.M.S.'s mother] in Dallas with [K.J.H.] |
|---|---|
| July 20, 2018 | In Louisiana, [J.E.H.] filed for ex parte custody of [K.J.H.], which was granted. |
| September 4, 2018 | [F.M.S.] released from rehab-complete program and released. |
| December 13, 2018 | [J.E.H.] and [S.H.] filed adoption. |
| January 2019 | [F.M.S.] rented her own place. |
| February 12, 2019 | [J.E.H.] granted sole custody of [K.J.H.] with no visitation to [F.M.S.'s parents] or [F.M.S.]. |

Thereafter, the trial court noted:

The testimony clearly indicated that [F.M.S.] has not seen or visited with [K.J.H.] in person since she went to jail in October 2017. She had been on the run for over a year and became pregnant. Her mother [] let her see [K.J.H.] if she would agree to turn herself in. So she saw [K.J.H.] in person for the last time in October 2017. [F.M.S.] served time in jail and then was transferred to an intensive drug rehab program. She completed the program and was released in September 2018. [F.M.S.] never sought visitation with [K.J.H.] after she was released in September 2018. She testified that she thought she would wait until she went to Court in December, 2018. However, after [F.M.S.] did not receive visitation in December, 2018, she still did not take any action to try and seek visitation. It was only in response to the adoption being filed that [F.M.S.] filed an opposition to the adoption three months later on February 7, 2019, and filed for a new trial in the custody proceedings on March 25, 2019.

[F.M.S.] was on the run for over a year from June 2016 until she turned herself in and went to jail on October 23, 2017. She last saw [K.J.H.] in person right before turning herself in having not seen her while on the run. Once in jail, [F.M.S.] did not have any contact with [K.J.H.] until she was transferred to rehab in December, 2017, and she started having contact with her by a video conferencing program, Home Waze, when her parents had visitation with [K.J.H.]. [F.M.S.'s parents] had visitation with [K.J.H.] once in December 2017, twice in February 2018, and once in March, 2018. [F.M.S.] did not have any contact with [K.J.H.] from March, 2018 until July, 2018, at which time [F.M.S.'s mother] had one last visit with [K.J.H.] and they Home Wazed with [F.M.S.]. [F.M.S.] testified that she tried to have contact with [K.J.H.] by calling between March and July 2018, until she learned there was a restraining order against her parents and family. However, the phone records do not support this testimony.

In summary, [F.M.S.] has not seen her child in person since October 2017. While she maintains that she has had contact with her child through video conferencing, this would be at the most five or six occasions when her parents had visitation with [K.J.H.] in December, 2017, February, 2018, March, 2018, and last in July, 2018. One face to face visit and approximately five video phone visits in a two year period is clearly not sufficient to maintain a relationship with her four year old

child. Further, the Court does not find just cause for her failure to visit and communicate. [F.M.S.] was on the run for approximately a year and then in jail and substance abuse treatment for approximately another year due to her actions and behaviors. Even when she was not incarcerated or in treatment, [F.M.S.] never made an effort individually or through the Court to see [K.J.H.] or have a meaningful relationship with her child.

For those reasons, the trial court determined that "[F.M.S.]'s consent to the adoption of [K.J.H.] [wa]s not necessary."

F.M.S. insists that she made multiple efforts to contact K.J.H., many that were allegedly thwarted by J.E.H.and S.H. She also points out that the TRO that was signed on July 20, 2018, prevented F.M.S.'s parents, and any of their relatives, from calling J.E.H., thus making it illegal for her to contact him about K.J.H..[7]

Our review of the record supports the timeline adopted by the trial court. According to that timeline, there were several six-month periods in which F.M.S. made no attempts to contact K.J.H.: i.e., the sixteen-month period, from June 2016 to October 2017, when she was evading incarceration; and from August 2, 2018,[8] shortly before her release from incarceration until the May 2019 trial of this matter. Moreover, we cannot say that a handful of HomeWAV tele-video conferences, or the calls F.M.S. made to J.E.H. when K.J.H. was not with him, amount to "significant contact." As F.M.S. conceded in an October 16, 2018 home interview conducted by the Arkansas Department of Human Services in conjunction with the investigation into the sexual abuse allegations that K.J.H. made against her grandfather[,] F.M.S. admitted that K.J.H. "does not even know her as her mom." In addition, it was J.E.H. who put money in F.M.S.'s account so that she could make calls when she was in prison, but J.E.H. testified that F.M.S. only called him while he was at work and away from K.J.H., who was at J.E.H.'s home with S.H. The trial

---

[7] [F.M.S.] admits, however, that she did not learn about the TRO until August 2018.

[8] In her appellate brief, [F.M.S.] stated that her last call to J.E.H. was on August 2, 2018.

testimony of J.E.H. and S.H. also indicated that F.M.S. had S.H.'s cellphone number, but F.M.S. made no attempts to contact her while J.E.H. was at work. Ultimately, we are convinced that a handful of HomeWAV tele-video conference calls do not amount to "significant contact" so as to satisfy the requirement of La.Ch.Code art. 1245(C)(2). In our estimation, any contact that F.M.S. had with K.J.H. was more a result of her parents' effort than her own. Thus, we conclude that the record provides a reasonable factual basis for the trial court's assessment that "[e]ven when she was not incarcerated or in treatment, F.M.S. never made an effort individually or through the Court to see [K.J.H.] or have a meaningful relationship with her child." Because the trial court's finding that F.M.S. lost her right to consent to K.J.H.'s adoption by S.H. is not clearly wrong, we find no merit to F.M.S.'s allegation that should be given the right to oppose K.J.H.'s adoption.

F.M.S. does not assign error to the trial court's decision that the adoption of K.J.H. by S.H. is in her best interest. She simply argues that there should be a plan in place to allow K.J.H. to stay in contact with her older half-brother and younger half-sister. Nevertheless, because the trial court was required to find that K.J.H.'s adoption by S.H. was in her best interest before granting the Adoption Petition, we must touch on this issue in our decision. In addition, this issue is relevant to our resolution of F.M.S.'s second assigned error.

With regard to whether S.H.'s adoption of K.J.H. was in her best interest, the trial court stated:

> *La. Children's Code art. 1255(B)* sets forth that the basic consideration in granting or denying an adoption is in the best interests of the child. La. Children's Code art. 1255(C) establishes a rebuttable presumption in favor of the stepparent petitioner:
>
> > When a court has granted custody to either the child's grandparents or his parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child.

12

The testimony revealed that [K.J.H.] has been in [J.E.H.]'s custody and being raised by him and her stepmother, [S.H.], since 2017. When [F.M.S.] and [J.E.H.] divorced, [K.J.H.] was first placed with [F.M.S.]'s parents and [J.E.H.] and [F.M.S.] were told they needed to get their life together. The testimony indicated that [J.E.H.] did that but [F.M.S.] did not. It's only recently that [F.M.S.] has taken steps to get her life in order. There is no doubt that [S.H.] has been the mother to [K.J.H.] for the last two years. [F.M.S.] has not seen [K.J.H.] in person since October 2017, because she has been in jail and substance abuse treatment. Since [F.M.S.] was released in September 2018, she has not made any effort individually or through the Court to see [K.J.H.]. The only contact [F.M.S.] has had with [K.J.H.] since October 2017, is by Home Waze, on the occasions when her parents had visitation.

[S.H.] quit her job in 2017 to stay home and care for [K.J.H.] She has been there for her every day and is the only mother [K.J.H.] knows. She has fed her, clothed her and been her support through all of the counseling and play therapy after the allegations of sexual abuse by her grandfather. While [F.M.S.] was never court ordered to pay child support, the Court would note that she never voluntarily provided financial support for her child since in [J.E.H.]'s care.

Lastly, the Court has concerns with [K.J.H.]'s possible contact with her grandfather. Despite being ordered to not have her husband around during her visit with [K.J.H.], the testimony indicated that [K.J.H.] reported that she saw her grandfather during her last visit with her grandmother in July, 2018. Further, [F.M.S.'s mother] testified that she did not believe that her husband touched [K.J.H.] inappropriately and she testified for him at his administrative hearing with Department of Children and Family Services. The Court cannot help but be concerned as to whether [F.M.S.'s mother] would protect [K.J.H.] from her husband given her position and actions she has taken in the past.

When the Court considers all of the issues surrounding [F.M.S.] and her failure to visit or communicate with [K.J.H.], as well as her lack of relationship with [K.J.H.] as her mother, along with the testimony indicating that [S.H.] has provided [K.J.H.] with the love, nurturing and stability she needs in a mother, the Court finds that the adoption of [K.J.H.] by [S.H.] is in her best interest.

Given the entirety of the circumstances, we unreservedly agree that K.J.H.'s best interest will be served by her being officially adopted by S.H., the wife of her father. Thus, we find no merit to F.M.S.'s first assigned error.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appealed are assessed against F.M.S.

**AFFIRMED.**